FRANK W. ELLIS *vs.* SARAH SIMONDS.

Middlesex. November 18, 1896. — May 20, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Malicious Prosecution — Want of Probable Cause — Malice.*

At the trial of an action for the malicious prosecution of the plaintiff on a criminal charge, the judge, in effect, instructed the jury that, if they found that the defendant in instituting the prosecution acted with the care and prudence which would have been exercised by a reasonable and ordinarily prudent person under like circumstances, they should then find that there was probable cause, and the defendant would not be liable. *Held,* that the defendant had no ground of exception.

At the trial of an action for the malicious prosecution of the plaintiff on a criminal charge, the judge instructed the jury that malice might be inferred from the want of probable cause, and told them what would and what would not constitute malice and probable cause, but did not instruct them that want of probable cause could not be inferred from malice. *Held,* that it was to be presumed that the jury followed the instructions given, instead of drawing inferences about which nothing had been said, and that the defendant had no ground of exception.

At the trial of an action for malicious prosecution, the defendant has no ground of exception to remarks of the judge to the jury by way of illustration or definition of probable cause and malice, where he expressly cautions them that it is for them to say how the questions which he suggests are to be answered, and that they are not to infer, from the manner in which the questions are stated, that one answer or another is to be given.

TORT, for malicious prosecution. Writ dated January 8, 1894. Trial in the Superior Court, before *Bishop,* J., who allowed the following bill of exceptions.

The plaintiff, on December 30, 1893, on complaint of the defendant, was arrested on the charge of obtaining money from the defendant by false pretences, taken to Malden, and, until bail was procured by him, was committed to jail. Subsequently, on a trial of the charge on January 8, 1894, the plaintiff was acquitted. The plaintiff testified that in 1893 he lived in Marlborough, in the upper tenement of an apartment house; that his sister in law, Mrs. Howe, occupied the lower tenement of the same house; that he first met the defendant in May, 1893, in Marlborough, whither she had gone to see the plaintiff's mother in law, who was ill, and who was living with her daughter, Mrs. Howe;

that the defendant came on one day, and went away the next; that during her visit she remained with Mrs. Howe, except that on the day after her arrival she went up stairs to the plaintiff's apartment and remained there for about an hour conversing with the plaintiff and his wife; that the next time the plaintiff saw the defendant was on September 20, 1893, at the same place, when she went there to attend the funeral of the mother of the plaintiff's wife; that the plaintiff was in the defendant's company at that time, and conversed with her in a general way both in his and Mrs. Howe's house; and that he next saw her in court at Malden.

The plaintiff further testified that he was arrested in Marlborough on Saturday, December 30, 1893, and taken to the police station; that on the following Monday he went to Malden to attend court; that after his arraignment, in default of bail, he was committed to jail in Cambridge; that he was handcuffed to three other men and with them was taken to the police station in Malden and subsequently to the jail in Cambridge, where he remained until bail was procured in the afternoon of the following day; that while so handcuffed he was taken through the streets of Cambridge, meeting on the way a person from Marlborough with whom he had long been acquainted; that on January 8, 1894, he was placed on trial; that at such trial the defendant testified that she swore out the complaint; that, according to the recollection of the plaintiff, the defendant testified that he went to her house in Malden on July 6, 1893, soliciting life insurance, and persuaded her to pay him ten dollars on account of a policy for which he gave her a receipt; that on direct examination she testified that she knew the plaintiff, and on cross-examination that she did not; that when asked why she did not make herself known to the plaintiff, she said she had a reason for it which she did not disclose; that she testified at the trial that the plaintiff, after July 6, was there with clothes-wringers, at which time she said she seemed to recognize the plaintiff and that she treated him to beer; that she then testified that when she was at the funeral in Marlborough the plaintiff turned his face from her and would not look at her, and at the railroad station in Marlborough he stood on the platform and laughed at her as the

train went out. The plaintiff further testified that he was not in Malden on July 6, 1893, and never received any money from the defendant; that he never went to her house as an insurance agent or representing himself as such, nor had he ever been employed by any insurance company to solicit insurance; that he did not go to the defendant's house selling clothes wringers, and that he did not turn his face away from her at the funeral or attempt to conceal himself from her. He also testified as to the injury caused to his reputation and business.

The wife of the plaintiff testified that the defendant was her cousin; that they first met in May, 1893, when the defendant came to Mrs. Howe's house and stopped there over night; that on the day after her arrival she came up stairs to the apartments of the witness, and remained for an hour or more with the witness and her husband, who was there all the time, and that the conversation was general between the plaintiff, the defendant, and the witness; that the next time the witness saw the defendant was in the following September at the funeral; that the defendant came to Mrs. Howe's the night before the funeral, but the witness could not say whether the defendant saw the plaintiff then, because he had a headache and retired early; that on the following morning the defendant came into the witness's house where the plaintiff was; that she was not certain that they conversed together, but thought they did; that they were together and spoke when in Mrs. Howe's house; that the witness went to Westminster after the funeral, and the defendant shook hands with her and the plaintiff at the depot at parting; that the witness conversed extensively with her at the house in a general way, although they were never alone together; and that at no time did the defendant say anything to the witness as to any misconduct of her husband, but that there was no lack of opportunity for the defendant to ask the witness to go aside and talk with her alone.

There was also evidence that, at the trial of the complaint against the plaintiff, the defendant testified that in July, 1893, a man came to her house and wanted her to take out a policy of insurance in some disability company; that she gave him ten dollars, for which, in two weeks, she was to receive a policy;

that the man gave her a receipt with the name C. M. Clark, and that that man was the plaintiff; that on cross-examination she testified that she knew at the time she paid him the money who he was; that he subsequently came and tried to sell her a clothes-wringer, and after that she knew who he was; and that she halloed to him and he ran away. There was also evidence that, at the time the complaint was issued, the defendant stated to the chief of the Malden police that she was positive that she knew the man who swindled her, and when he asked her how she knew it, she said that he was married to a relative of hers who lived in Marlborough, and that she last saw him there at the funeral of a relative, and had never seen him before; and that she said he was not much of a man, and his wife's sister wanted to get rid of him.

The defendant testified that a man came to her house in July, and desired her to take a policy of insurance; that he talked so smooth and long that she finally gave him ten dollars; that he then gave her a receipt and departed, saying he would be around again in a short time; that on his failure to return she went to the chief of police and showed him the receipt and he said it was worthless, and that several detectives were after a man of that character; that the defendant had a faint recollection of having seen the man before, but could not then place him; that on the day before the funeral she went to Marlborough, but did not see the plaintiff, whose wife said that he had a headache and could not come down; that on the day of the funeral she saw him and said, "Mr. Ellis, how is your head?" and that he turned his face away from her and replied, "Better"; that at that time the plaintiff was very busy, and had no time to talk to anybody, and that the defendant did not see him again until she was at the railroad station, and the plaintiff stood on the platform looking toward her and laughing; that when the plaintiff replied to her question the defendant recognized him by his features, his form, his general appearance, his strange conduct, and his refusal to look at or speak to her, or to go into the room where she could talk with him; that after her visit to Marlborough she told the Malden chief of police that she was quite sure she had recognized the man, after which she had him arrested; that she made the complaint because she felt it to be a duty; and that

she had no malicious feeling towards him. On cross-examination the defendant testified that it was in the forenoon of July 6 that the man came to her house to talk about insurance; that they were in the same room talking together, and that she had good opportunity to see him; that he may have been in the house half an hour, during which time he did not remove his hat; that after he had left the house it occurred to her that he resembled somebody she had seen before, and that at the funeral it first occurred to her that this man resembled the plaintiff; but that she did not endeavor to hold any conversation with the plaintiff or his wife at the time of the funeral nor seek any opportunity to do so, because the arrangements for the funeral made it impracticable. The defendant also denied that she had said that Ellis was a worthless fellow, and that Mrs. Howe wanted to get rid of him.

This was all the material evidence in the case.

The judge instructed the jury in substance as follows. In order to maintain this action, it is essential for the plaintiff to prove three propositions, viz.: first, that he was acquitted or discharged in the criminal prosecution instituted by the defendant; secondly, that there was a want of probable cause on the part of the defendant in instituting such proceeding; and, thirdly, that in instituting it she was actuated by malice. The first proposition has been proved and admitted by the defendant. In determining the second proposition, you are to inquire whether, if the defendant had acted like an ordinarily prudent person, she would have instituted this proceeding against the plaintiff, or, considering the events as of the time when they occurred, was there such an absence of a justifiable cause for the institution of such a prosecution that a reasonable and prudent person would have refrained from instituting it? Now what were the facts, if any, which justified her conduct? Did she or did she not act with ordinary care, prudence, and caution in such an important matter as making an accusation which would cause the arrest, confinement, and trial of the man against whom it was made? If she did, she is not liable. But if an ordinarily prudent person would have bethought himself and have said, Perhaps I may be mistaken; I saw Ellis only once before this transaction, and once after it at the funeral, and I have seen the man

who swindled me but once, and though I think Ellis is that man and my suspicions are aroused, yet I am not certain, and since Mrs. Ellis is a relative of mine and I know nothing else against him and there are people in Marlborough of whom I can make inquiries, I will go and have a talk with Ellis and his wife and see what all this means ; or, if there is no opportunity at the funeral, I will later go to Marlborough again to make inquiries before I swear out a complaint that he is the man who swindled me ; — then in omitting so to do before swearing to the complaint the defendant failed in her duty. It is for you to say which of these two things is true ; if you find that she acted prudently, she is not liable ; if you find that she did not so act, then it is for you to consider whether her conduct was actuated by malice. Malice may be inferred from a want of probable cause, but such an inference does not follow of necessity, and it may be inferred from all the circumstances of the case, since it is seldom that direct evidence of malice is produced. - Now, testing this proposition by the circumstances of the case, would a fair minded person under such conditions have failed to make inquiries and verify her suspicions? This inquiry is applicable to this as well as to the previous proposition. There is evidence that the defendant stated to the chief of police in Malden that the plaintiff was married to a relative of hers ; that he was not much of a man, and that his wife's sister wanted to get rid of him. I do not refer to this evidence for the purpose of leading you out of the line of legitimate evidence ; but, although you are not by suspicion to infer a motive or result from something which does not appear, you have a right to draw such inferences as you may think are justified by the evidence and the facts. Now, on the evidence, was the defendant in a malicious frame of mind toward the plaintiff, so that she did not exercise that caution and care which, had she not been actuated by that motive, she would have exercised?

The defendant requested the judge to rule as follows :

"1. The question of probable cause must be decided by the circumstances existing at the time of the arrest, and not by the turn of subsequent events.

"If the defendant had at that time such grounds for supposing the plaintiff guilty of the crime charged as would satisfy

a cautious person, then she violated no duty to the plaintiff in procuring his arrest, though such grounds be immediately and satisfactorily explained away or the truth discovered by the prosecutor herself, and if the jury find that the defendant had such ground at that time then their verdict must be for the defendant.

" 2. A person who has been arrested for an offence and who is really innocent may have suffered great damage by reason of his arrest, and may have expended large sums of money to show his innocence and procure an acquittal.

" But the mere facts of his innocence and the injury which was caused him by his arrest do not entitle him to recover for the injury from the person who caused the arrest. If it were so, then every person arrested and acquitted would be entitled to recover damages for the injury.

" It is only when the arrest was made without probable cause and maliciously that a right of action is given to him.

" 3. The burden of proof is upon the plaintiff to show that his arrest was without probable cause. This means that the plaintiff must establish to the satisfaction of the jury that when the defendant caused his arrest she did not honestly believe that he was the guilty person. It was not sufficient that the plaintiff should show that he was not the person who committed the offence, but he must also show in addition that the defendant did not believe him to be that person, or that as a cautious person she ought not to have believed it. The absence of this belief must be proved by the plaintiff.

" As matter of law, there is no evidence to show that the defendant did not believe the plaintiff Ellis to be the person who committed the offence for which he was arrested, and that issue must be decided in favor of the defendant.

" 4. It was not necessary that before she caused the plaintiff's arrest the defendant should have been satisfied beyond any doubt that the plaintiff was the person who committed the offence.

" If, as a person of ordinary intelligence and caution, she was reasonably satisfied that he was the man, then the arrest was justified and the verdict should be for the defendant.

" 5. The question in a case of this kind is not ' Was the party charged in fact guilty ? ' but ' Had the prosecutor, acting as a cautious and prudent person, reasonable ground to believe that

he was guilty ?' And the fact of the subsequent acquittal of the accused does not affect in any manner the question whether the plaintiff in the former case, who is defendant here, acted without probable cause.

" The question whether there was probable cause for the institution of the case by this defendant before the court at Malden must be divided into two parts : first, was there probable cause to believe that the offence was committed ; secondly, was there probable cause to believe that the accused was the party who committed that offence.

" Probable cause does not depend upon the actual state of the case in point of fact, but upon the honest and reasonable belief of the party commencing the prosecution.

" There is no question on the first of these propositions, that there was such probable cause. As to the second, if the defendant at the time she instituted the prosecution against Ellis honestly and reasonably believed that he was the person who had committed the offence, then she cannot be held in damages because it turned out at the trial or afterwards that she was mistaken in the man.

" She could not act hastily, wantonly, or without caution in arriving at this conclusion; but if, acting as a prudent and cautious person, she honestly believed that he was the man and acting upon that belief caused his arrest, then she is not guilty of a malicious prosecution, and the verdict should be in her favor.

" It would be a dangerous principle if a person who institutes criminal proceedings against another, acting honestly and in good faith upon well grounded suspicion that such other person had committed an offence, should afterwards, when it turns out that the accused was in fact innocent, be liable for an action for malicious prosecution. Such a rule would greatly embarrass our criminal procedure, and is therefore not recognized by the law. Therefore, the rule is that an action of malicious prosecution will not lie against the prosecutor if he or she proceeded upon an honest belief that the person accused is the guilty person.

" 6. There is no question that a fraud was really perpetrated on the defendant by some person in procuring from her money on the pretence of insurance for disability, and that she was fully

justified to make or lodge a criminal complaint, and cause the arrest of the perpetrator of the crime.

" The question is now whether she had probable cause to believe that this plaintiff, Ellis, was the person who perpetrated that fraud upon her.

" Upon that point, if the defendant, acting as a cautious and prudent person, honestly believed from the plaintiff's appearance and actions that he was the person, or if she identified him as such in the honest belief that he was the person, then there was probable cause for her prosecution, though it turned out afterwards that she was mistaken in his identity.

" 7. The law as applicable to a case of malicious prosecution is, that if a person makes a charge for an offence actually committed, and identifies another person as the perpetrator thereof, the question is not whether the identification was correct, but whether the accuser as a cautious person honestly believed that the party charged was the guilty party, and it matters not whether he in fact was the real party or not. Cases of mistaken identity may honestly occur, and so long as the defendant in identifying the plaintiff acted as a cautious person, in good faith, she is not to be charged with a malicious prosecution.

" 8. The acquittal of the accused on his trial is not any evidence of the want of probable cause, and the jury has not the right from the fact of acquittal alone to assume that the prosecution was without probable cause.

" 9. The want of probable cause does not raise a legal presumption of malice.

" It may be inferred therefrom, as it may be inferred from other circumstances. But by whatever mode it may be proved, it must be proved as a fact.

" 10. If the jury believe from the evidence that the defendant, acting as a cautious person, honestly believed the plaintiff to have been the person who committed the offence, and acting upon such honest belief she caused his arrest, then the jury must find for the defendant, even if malice has been shown to have existed.

" 11. The jury must pass on the question of malice as a distinct matter; there is no such thing as implied malice in an action of this kind.

"A wrongful charge even made without probable cause is not of itself malicious in fact.

"It must be affirmatively shown by the plaintiff that she, the defendant, was actuated in her conduct by malice or some improper or sinister motive.

"12. It has been said that malice may be inferred from the want of probable cause. This does not mean that, because the jury believe that the defendant had no probable cause in her prosecution against the plaintiff, therefore they must infer that the prosecution was malicious.

"The want of probable cause itself does not prove conclusively that the prosecution was malicious; all that is meant when we say that the jury may infer malice from the want of probable cause is, that, when a person accuses another wrongfully and without probable cause, the jury might infer that such prosecution was malicious because no other ground for it is reasonably apparent. But, on the other hand, the jury may well believe that though a person wrongfully and without probable cause accuses another of crime, the prosecution may still be free from malice and actuated by honest motives.

"Therefore, even if the jury believe that the prosecution of the plaintiff was without probable cause, but the jury do not believe from the evidence it was instituted or carried on with malice, the verdict must be for the defendant."

The judge declined to give such rulings in the form requested; and to such refusal, and to so much of the charge as referred to the degree of prudence required to establish probable cause, and to so much thereof as referred to the elements of malice, the defendant excepted.

The jury returned a verdict for the plaintiff.

*J. M. Lesser*, (*G. H. Fall* with him,) for the defendant.

*J. W. McDonald*, for the plaintiff.

MORTON, J. The plaintiff was bound to establish three things: first, that he had been acquitted of the charge; secondly, want of probable cause on the part of the defendant; and thirdly, malice on the part of the defendant. *Stone* v. *Crocker*, 24 Pick. 81. *Bacon* v. *Towne*, 4 Cush. 217. *Good* v. *French*, 115 Mass. 201. *Lister* v. *Perryman*, L. R. 4 H. L. 521. These were to be shown affirmatively by him, as the court

instructed the jury.   As there was no real controversy about the fact of acquittal, the main issues related to probable cause and to malice.

In regard to probable cause the court, in effect, instructed the jury that if the defendant acted in instituting the prosecution with such care and prudence as a reasonable and ordinarily prudent person would have acted under the circumstances, then they should find that there was probable cause, and that that would end the case.   We think that this was correct.   If the prosecutor acts as a reasonable and discreet person would have acted under the circumstances, then it must follow that there is probable cause for the prosecution, or, in other words, ground for a strong suspicion of, or an honest belief in, the guilt of the accused.   If there was probable cause, then, even though the prosecution was malicious, the court was right in saying that the defendant was entitled to a verdict.   *Stone* v. *Crocker*, *ubi supra.*

In regard to the question of malice, while the court instructed the jury that malice might be inferred from want of probable cause, it did not instruct them that want of probable cause could not be inferred from malice.   But the jury were told what would constitute malice and what would constitute probable cause, and what not, and it is to be presumed that they followed the instructions thus given, instead of drawing inferences about which nothing had been said.   We do not understand the instructions to mean that malice was to be inferred from a want of care and caution, but that the jury might consider whether the failure to make such inquiries, as a reasonably prudent person might have made, was or was not due to a malicious purpose on the part of the defendant.   This they properly were allowed to do.

The defendant presented numerous requests for instructions, twelve in all.   None of them were given in the form requested, and the court was not obliged to give them in that form if it gave them in substance, so far as applicable to the questions at issue. *Hudson* v. *Marlborough,* 154 Mass. 218.   *Norwood* v. *Somerville,* 159 Mass. 105.   Without considering the requests in detail, we deem it enough to say that we think that the instructions which were given were sufficient.   We do not think that the jury could have been biased or misled by anything which was said

by the judge by way of illustrating or defining what was or was not probable cause or malice. He expressly told them that it was for them to say how the questions which he suggested should be answered, and that they were not to infer from the manner in which the questions had been stated that one answer or another was to be given.                                  *Exceptions overruled.*