## WALTER H. CASAVAN *vs.* UDELPHO V. SAGE.

Middlesex.    December 10, 1908. — March 29, 1909.*

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Practice, Civil*, Exceptions, Conduct of trial. *Malicious Prosecution. Witness,* Contradiction.

No exception will be sustained on account of an error of a presiding judge in admitting incompetent evidence which has no apparent connection with the case, where there is nothing in the record to show that its admission harmed the excepting party.

A presiding judge cannot be required to base a ruling as to the plaintiff's right to recover upon a partial view of the evidence.

In an action for alleged malicious prosecution, where the defendant's liability depends on the question whether he acted with reasonable and probable cause in making a criminal complaint against the plaintiff, if the defendant asks the presiding judge to rule that, if the jury believe that certain witnesses told the defendant what they testified that they told him, and that the defendant believed the statements to be true, the defendant acted with reasonable and probable cause and the plaintiff cannot recover, the presiding judge is justified in refusing to make the ruling on the ground that it omits the important qualification, that the belief of the defendant in the statements made to him must be reasonable in view of the character of the information, the sources from which it came and the circumstances under which it was communicated.

In an action for alleged malicious prosecution, where the defendant's liability depends on the question whether he acted with reasonable and probable cause in making a criminal complaint against the plaintiff, it is only when the facts are undisputed that the question whether or not there was probable cause becomes one of law. If there is a controversy between the parties as to several material facts, the question of the existence of probable cause must be submitted to the jury.

In an action for alleged malicious prosecution, where the defendant's liability depended on the question whether he acted with reasonable and probable cause in making a criminal complaint against the plaintiff charging him with simple larceny of certain chattels, the presiding judge in substance instructed the jury that if one, suspecting that a crime has been committed, fairly represents to a magistrate all the circumstances as he believes them to be with an honest conviction of their existence and truth, and is satisfied as a cautious man that they furnish reasonable ground for such a conclusion, he has done his duty and should be exonerated. The judge amplified these propositions and stated them in various forms in plain language, and gave the rule as to the burden of proof correctly. *Held,* that the instructions were correct, and that, simple

---

* The opinion in this case was withdrawn on an application for a rehearing. This was denied on May 17, 1909, when the case was returned to the Reporter.

larceny being a crime so easily understood, instructions in greater detail were not required.

No exception lies to the exclusion by a presiding judge of evidence offered to contradict the testimony of a party to the action on trial upon a point which is immaterial and irrelevant.

TORT for alleged malicious prosecution. Writ dated June 28, 1906.

At the trial in the Superior Court before *Hardy*, J., it appeared that on May 17, 1906, the plaintiff was arrested under a warrant issued on the complaint of the defendant for the larceny of one vice, one wrench, one pair of shears and one joint runner. The plaintiff testified that he was a plumber by trade; that he had been the manager of the New England Carbonator Company, which was sold in December, 1904, to the Sage Brothers Company, of which the defendant was the president; that he told the defendant at that time that he had borrowed the tools in question from one Fisher, of Somerville, to use in the business; that about three months after the business was sold to the Sage Brothers Company he returned these tools to Fisher; that about eight months after the return of the tools, namely, in December, 1905, he was discharged by the Sage Brothers Company, and in a week or two started in business with three others who had been in the employ of the Sage Brothers Company, for the purpose of carrying on a business similar to that of the Sage Brothers Company; that at the time of his discharge the defendant called him a thief, accused him of stealing the tools, and threatened to have him arrested therefor; that in the May following he was arrested on the complaint made by the defendant for the larceny of the tools, was tried in the Municipal Court of the City of Boston, and was discharged. The plaintiff also called certain witnesses who testified to certain expressions of ill will toward the plaintiff used by the defendant.

The plaintiff testified that while he was waiting for bail at the police headquarters the inspector went to the telephone and called up some one and asked if it was Sage Brothers Company and said, "You needn't wait any longer because we went around the other way." To the admission of this evidence the defendant excepted.

The police inspector referred to, who was called by the plain-

tiff as a witness, admitted on cross-examination that he had no recollection of making any such statement over the telephone and that it would be at least a very peculiar thing for him to say.

The defendant admitted, at the argument before the full court, that there was sufficient evidence of malice on the part of the defendant toward the plaintiff to entitle the plaintiff to recover provided the defendant did not act with reasonable and probable cause.

The defendant testified that soon after the purchase of the business by the Sage Brothers Company the plaintiff sold certain tools to the Sage Brothers Company, and introduced in evidence an instrument signed by the plaintiff and the Sage Brothers Company, which the plaintiff admitted to be genuine, in which the plaintiff in consideration of the issuing to him of certain stock in the Sage Brothers Company agreed " that all tools which he had, or may have had in the factory occupied by the New England Carbonator Company, the title to same is hereby conveyed to the said " Sage Brothers Company.  The factory was purchased by the Sage Brothers Company on or about January 1, 1905, the date of the instrument.  The plaintiff testified that the instrument did not refer to the tools in question.  The defendant and one Johnson, who testified that they had been in partnership with the plaintiff under the name of the New England Carbonator Company, testified that the plaintiff claimed to own the tools referred to in the warrant except the vice, which Johnson testified had belonged to the company from which the New England Carbonator Company received the machinery and the stock used in the business of the New England Carbonator Company. Johnson testified and the plaintiff admitted that the vice in question was a large, heavy vice, and had been lying unused under one of the benches all the time that the New England Carbonator Company had been in business, as there was another vice of about the same size in use which served all the purposes required.

The defendant and Johnson testified that Johnson some time during the summer of 1905 told the defendant that the plaintiff had collected from the shop a quantity of ball cocks and carried them to the office adjoining with the apparent intention of taking

them away with him, and, in that conversation, in response to a question asked by the defendant as to whether the plaintiff had taken anything else, Johnson told him that several months before, about half past five one afternoon, the plaintiff had taken a number of tools from a certain chest, including the tools referred to in the warrant, and had sent them away. Johnson, who had general charge of the manufacturing department of the Sage Brothers Company, then told the defendant that he would not be responsible for the things in that shop any longer unless the lock was changed, because the plaintiff had a key to the premises, and Johnson then insisted that the lock be changed. The plaintiff admitted that for a long time he had had a key to the shop, and that one night he went to the shop after hours for some purpose and found that the lock had been changed.

The defendant and one Pineo, an expressman, testified to a conversation between the defendant and Pineo a short time before March 31, 1906. In this conversation the defendant remarked that he would like to know who took away certain tools for the plaintiff. To which Pineo replied, stating that he had taken some tools for the plaintiff, and then stated that they consisted of a box of tools and a vice, and that he took them out to a plumber in Somerville by the name of Fisher. That thereupon the defendant stated that that was just what he had been wanting to find out, what expressman took those tools away. The plaintiff produced a letter from the defendant to Fisher, stating that something had come to his attention which was of importance to Fisher and asking Fisher to call and see him. This letter was dated March 31, 1906, and was introduced in evidence by the defendant. In the conversation Pineo told the defendant that he received an order from the plaintiff asking him to call for some tools at the shop not earlier than 5.30 in the afternoon; that he did call a few minutes before half past five; that the plaintiff at first hesitated as to whether he should have the tools taken away then or not, but decided to have them go. The plaintiff admitted that the elevator then was closed and that the tools including the heavy vice had to be carried down two flights of stairs.

The plaintiff testified that he was simply the manager of the New England Carbonator Company and had no other interest

in it, but later admitted that he had an interest in the profits of the company. He further testified that Johnson, who worked in the shop of the New England Carbonator Company, and later for the Sage Brothers Company, was simply an employee under the plaintiff while the plaintiff was the manager for the New England Carbonator Company, and that Johnson had no interest whatever in the business, except as an employee. Johnson testified that he was a partner with the plaintiff in the business. The plaintiff testified that the books of the New England Carbonator Company were kept by him or under his supervision. The defendant then offered the cash book of the New England Carbonator Company, showing an entry on the first page thereof of $100 paid by the plaintiff as an investment in the business and $100 paid by Johnson as an investment in the business. The judge excluded this evidence and the defendant excepted.

The defendant asked the judge to instruct the jury as follows: "If the jury believe that Mr. Johnson told Mr. Sage what he testified he told him, and that Mr. Pineo told Mr. Sage what he testified he told Mr. Sage, and if Mr. Sage believed the statements to be true, then the defendant acted with reasonable and probable cause, and the plaintiff cannot recover."

The judge refused to give this instruction and instructed the jury instead that it was for them to determine under all the circumstances of the case whether or not the defendant acted with reasonable and probable cause in having the plaintiff arrested, that, if he did not act in good faith on the information given to him, he could not be said to have acted with reasonable and probable cause.

The substance of the charge is stated in the opinion.

The jury returned a verdict for the plaintiff in the sum of $500 ; and the defendant alleged exceptions.

*O. Storer*, for the defendant.

*H. A. Wilson*, for the plaintiff.

Rugg, J. This is an action for malicious prosecution. The plaintiff was discharged by a court of competent jurisdiction after having been arrested upon a charge of larceny preferred against him by the defendant.

1. The plaintiff was permitted to testify, subject to the defendant's exception, that after his arrest and while waiting for

bail at police headquarters, the inspector called some one on the telephone and asked if it was Sage Brothers Company and said, " You needn't wait any longer because we went around the other way." This evidence was inadmissible. It does not appear to have been spoken to the defendant or to anybody acting for him. But there is nothing in the record to show that this error occasioned any harm to the defendant. The one who is reported to have made the remark was a public official and his action and words do not seem to have even a remote connection with either the plaintiff or the defendant, or the present action. For aught that appears, it related to a wholly foreign matter. It was suggested at the argument before us that some improper use was made of this evidence by counsel in his remarks to the jury. But there is nothing in the record respecting this and no exception was saved to such conduct. It falls within the class of harmless errors, as to which justice does not require that an exception be sustained.

2. The defendant requested a ruling that "if the jury believe that Mr. Johnson told Mr. Sage (the defendant) what he testified he told him, and that Mr. Pineo told Mr. Sage what he testified he told Mr. Sage, and if Mr. Sage believed the statements to be true, then the defendant acted with reasonable and probable cause, and the plaintiff cannot recover." It would have been unjust to grant this request in view of all the evidence. One important point as to which the testimony was conflicting was whether the plaintiff, at the time he sold certain chattels to the corporation of which the defendant was president, told the defendant that the articles, with the larceny of which the complaint charged him, had been borrowed from one Fisher in Somerville and were not included in the sale. If it was true that this statement was made by the plaintiff to the defendant, then it would not follow that belief by the defendant in the assertions made to him by Johnson and Pineo would constitute reasonable and probable cause, because they were not inconsistent with ownership of the articles by the plaintiff. Pineo's testimony showed that the tools in question had been taken to a plumber named Fisher in Somerville. While the testimony of Johnson and Pineo standing alone might have a tendency to arouse suspicion against the plaintiff in the mind of

a reasonably cautious and prudent man, yet it cannot be ruled, as matter of law, that if the defendant, to whom these statements were made, knew through other channels of information that the plaintiff asserted that he reserved the chattels, which he removed, from the sale of all his other like goods on the ground that they belonged to Fisher, to whom they were delivered, the defendant would nevertheless have reasonable ground for believing the plaintiff to be a thief. This is an illustration of the reason of the rule that a judge cannot be asked to base a vital part of his charge upon a partial view of the evidence. The request was defective also in omitting the important qualification that the belief of the defendant in the statements made to him must be reasonable, in view of the character of the information, the sources from which it came, and the circumstances under which it was communicated.

There was controversy between the parties as to several material facts. Hence the existence of probable cause was necessarily submitted to the jury. It is only when the facts are undisputed that whether or not there was probable cause becomes a question of law to be determined by the court alone. There was no error in the portions of the charge to which exception was taken. The jury were told in substance that if one, suspecting that a crime has been committed, fairly represents to a magistrate all the circumstances with an honest conviction of their existence and truth and is satisfied as a cautious man that they furnish reasonable ground for such a conclusion, then he has done his duty and should be exonerated. These propositions were amplified and stated in various forms of plain language and the rule as to the burden of proof was given correctly. This was in conformity with numerous decisions of this court. *Mitchell* v. *Wall*, 111 Mass. 492. *Laing* v. *Mitten*, 185 Mass. 233. *Ellis* v. *Simonds*, 168 Mass. 316. The crime of simple larceny of certain chattels is one which may readily be understood by the ordinarily intelligent person and the facts, whether direct or circumstantial, which would justify a reasonable and prudent man in honestly believing one guilty of this offence, are not commonly such as to require instructions to the jury in greater detail than appear upon this record.

3. The plaintiff testified that one Johnson had no interest

whatever in the business conducted by the New England Carbonator Company, he himself having an interest in it and being its general manager, and that its books were kept by him or under his supervision. The defendant then offered the books of the company for the purpose of showing that Johnson had an interest in this business and thus contradicting the plaintiff. But this inquiry in all its branches was wholly aside from the issue on trial. The plaintiff's testimony upon this point having been immaterial and irrelevant was not open to contradiction. *Gorham* v. *Moor*, 197 Mass. 522, 525, and cases cited.

*Exceptions overruled.*