### EDWARD T. BANNON *vs.* ASA AUGER.

Bristol.    October 24, 1927, January 16, 1928.— February 29, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Malicious Prosecution. Conveying Encumbered Land without Notice. Mortgage,* Of real estate. *Evidence,* Presumptions and burden of proof, Inference.

An essential element of the proof required to maintain an action for malicious prosecution is that the original proceedings against the plaintiff were terminated by judgment in his favor; proof of such termination is not merely a subsidiary part of proof of want of probable cause.

In an action for malicious prosecution against an attorney at law who was alleged by the plaintiff to have procured his arrest upon a complaint in a district court, it was *held,* that there was not a termination of the original proceedings in the plaintiff's favor sufficient to enable him to maintain the action, where, after a claim by a client of the defendant against the plaintiff had been adjusted by them, the complaint was, by arrangement between the plaintiff and the defendant, dismissed in open court on motion by the defendant.

That the original proceedings above described were dismissed with the consent of the plaintiff was shown conclusively in the circumstances, although the plaintiff refused to participate in the court room in the dismissal of the complaint, and although the defendant's client, upon the defendant's advice, immediately thereafter gave the plaintiff a written statement to the effect that he exonerated the plaintiff from all criminal intent, and that "the criminal proceedings were started on advice of friends and hastily."

In an action for malicious prosecution, want of probable cause on the defendant's part to institute the original proceedings against the plaintiff cannot be inferred from malice on the part of the defendant; the burden is on the plaintiff to establish want of probable cause by positive proof.

Where the facts are undisputed at the trial of an action for malicious prosecution, the question, whether there was want of probable cause on the part of the defendant to institute the original proceedings against the plaintiff, is one of law for the court to decide.

Where, at the trial of the action above described, it appeared that the defendant caused the plaintiff's arrest upon a complaint charging him with larceny and a violation of G. L. c. 266, § 80, by fraudulently obtaining a loan from the defendant's client upon worthless security, and that thereafter the plaintiff paid the amount of the loan, it was *held,* that the defendant acted with probable cause, which barred recovery by the plaintiff although there was evidence of malice on the part of the defendant in instituting the prosecution.

TORT for malicious prosecution. Writ dated November 13, 1923.

In the Superior Court, the action was tried before *Lummus*, J., who denied a motion by the defendant that a verdict be ordered in his favor. There was a verdict for the plaintiff in the sum of $5,000, and the defendant alleged exceptions.

The case was argued at the bar in October, 1927, before *Braley, Crosby, Pierce, Carroll,* & *Wait*, JJ., and afterwards was submitted on briefs to all the Justices.

*T. F. O'Brien*, for the defendant.

*P. H. Kelley*, for the plaintiff.

CROSBY, J. The declaration as amended is in three counts. The first and second allege in substance that the defendant, without probable cause and with intent to injure the plaintiff, "did make, advise, aid and direct" a criminal complaint in the Third District Court of Bristol to be made charging him with larceny, and that thereafter the complaint was dismissed by the judge of that court and the plaintiff was discharged. The third count alleges that the defendant maliciously and without probable cause "procured, advised, aided and abetted in having a criminal prosecution instituted against the plaintiff in the Third District Court of Bristol County" charging the plaintiff with the crime of having concealed certain encumbrances in violation of the provisions of G. L. c. 266, § 80. At the time the complaints were issued the plaintiff was a member of the bar practising law in New Bedford; he was disbarred in 1924. The defendant also is a member of the bar practising in New Bedford.

There was evidence tending to show that the plaintiff requested one Thompson to lend him money; that he told Thompson he would give him a note and a mortgage upon certain real estate, but he did not wish the mortgage recorded for the reason that he had never recorded his deed; that if later he should record the deed, the mortgage could be recorded; that the plaintiff drew and executed a mortgage and a note for $3,000; that he told Thompson there were two mortgages on the property that were on it when he

bought it from one Hall, but, as he did not know the exact amount of them, he had not mentioned them in the mortgage.  The note was payable on November 1, 1921.  Thompson then accepted the note and mortgage upon the terms proposed by the plaintiff, and also took an assignment of two life insurance policies on the plaintiff's life in the sum of $5,000 each, and lent him $3,000 thereon.  The mortgage was in the statutory form "with mortgage covenants" and described the real estate as "being same premises conveyed to me by deed of Lewis H. Hall, July 26, 1915," but no mention was made of any encumbrance.  The mortgage was dated and acknowledged on November 1, 1920, but has not been recorded.

The record recites that on the date of the mortgage given to Thompson the state of the title to the real estate was as follows: "The plaintiff held an unrecorded deed from one Lewis H. Hall to the plaintiff, dated July 26, 1915, which truly recited that the premises were subject to a mortgage held by Esther C. Homer for $1500, and to a mortgage held by Annie L. Chase for $600.  Said mortgages were on record.  On December 15, 1919, the plaintiff had given a mortgage 'with mortgage covenants' on the same property to Joseph H. Gaudreau, for $2,000, which was recorded the same day which mortgage was later cancelled and discharged in fact prior to the giving of the Thompson mortgage on November 1, 1920, though remaining on record.  The defendant did not know of the Gaudreau mortgage at the time of the criminal prosecution against the plaintiff.  The defendant introduced evidence tending to show that the plaintiff, on January 13, 1921, gave a mortgage to one George B. Schumm for $3500, payable in one year with interest at seven per cent per annum, payable semiannually, covering the same property, which mortgage was recorded on November 17, 1921.  This mortgage was in the statutory form, 'with mortgage covenants,' and recited no prior encumbrance.  The plaintiff testified that he never in fact owed anything on that mortgage."

On July 20, 1921, the plaintiff had the deed to him from Hall recorded, and on August 22, 1921, conveyed the prop-

erty to one Murphy by a deed absolute in form, with covenants of warranty reciting only that the land conveyed was subject to the Homer and Chase mortgages.   About November 16, 1921, and soon after the note held by Thompson became due, Thompson consulted the defendant about collecting the note, and the latter acted as his counsel for that purpose.   The defendant did not communicate with the plaintiff or make any demand for payment of the note, but advised Thompson that it would be useless to do so.   He found the Chase and Homer mortgages upon the records, but did not make any inquiry as to what was due upon them. He knew that Thompson held the insurance policies as collateral security, and that there would be no need of such security if the mortgage of $3,000 were a first mortgage, for the real estate "was worth as much as $3,500 upon his own estimate.   Other evidence tended to show its value as $6,500 or more."

The record shows that upon the defendant's advice Thompson went with him to see Walter I. Mitchell, clerk of the Third District Court of Bristol, at New Bedford, for the purpose of making a criminal complaint against the plaintiff for a violation of G. L. c. 266, § 80.   "The defendant at first considered that as matter of law the plaintiff, in a criminal complaint against him under that section, would not be permitted to show by oral testimony that he had orally notified Thompson of the existence of the Homer and Chase mortgages; but, when contradicted by Mr. Mitchell on this point of law, said, 'You may be right, it is debatable.'"

The defendant, in answer to an interrogatory for a full statement of his talk with Mitchell, omitted that he told Mitchell about the assignment of the insurance policies, but at the trial he testified that he did tell him about them. Mitchell testified that he did not recall being told about the policies.   There was evidence that the defendant also failed to inform Mitchell that there was an agreement or understanding between the plaintiff and Thompson that the latter was not to record his mortgage.   Mitchell suggested to the defendant that the matter might be taken up with the dis-

trict attorney before criminal proceedings should be instituted, but the defendant and Thompson said they desired immediate criminal action against the plaintiff, "because they thought the plaintiff had got to the end of his rope." The defendant said to Mitchell, "First come, first served. If Bannon is arrested he may make restitution, and I want to be first if possible." Thereupon, at the request and with the consent of the defendant, Thompson signed and made oath to the two complaints, and warrants were issued upon which the plaintiff was arrested on November 18, 1921; he was afterwards released on bail. The next day the plaintiff was arraigned in court and pleaded not guilty in each case; the cases were continued until December 14, 1921, at the request of the defendant who appeared as attorney for Thompson.

Thereafter "some correspondence and conversations . . . ensued between the plaintiff and the defendant, relative to the settlement of the Thompson note and the termination of the criminal proceedings." The hearing upon the complaints was further continued until January 4, 1922, and thence until January 28, 1922. On the morning of the last named date the plaintiff, the defendant and Thompson met in a room in the court house. The plaintiff had with him a note and a mortgage of real estate executed by Ellen Sullivan, his mother-in-law, in favor of Thompson. The plaintiff and the defendant agreed that upon the termination of the criminal proceedings the plaintiff would give the defendant as attorney for Thompson the note and mortgage, and that Thompson would give the plaintiff a statement "exonerating the plaintiff from criminal conduct." The defendant requested the plaintiff to come into the court room to participate in the dismissal of the complaints, but the latter refused, saying that the defendant must have the complaints dismissed of his own motion, without participation by the plaintiff. The defendant then went into the court room and asked the judge to dismiss the complaints. On the back of each the judge then wrote "Dismissed at the request of the complainant," and the plaintiff was then discharged.

The defendant did not disclose to the judge the statement

signed by Thompson for the reason, as testified to by him, that he did not wish to give the impression to the judge that his client did not think he could maintain the complaints or that the plaintiff was not guilty. The plaintiff was in the court room when the complaints were dismissed but said nothing. Immediately thereafter he and the defendant met in a room outside the court room and the Sullivan note and mortgage were delivered by the plaintiff to the defendant as attorney for Thompson, but the plaintiff did not receive back the original note and mortgage or the insurance policies. The defendant at the same time gave the plaintiff the following statement, written by the defendant and signed by Thompson upon the advice and recommendation of the defendant, which the plaintiff had insisted upon receiving as a part of the transaction: "To whom it may concern. The loan of $3000 which I made to Ed. T. Bannon, Esq., has been satisfactorily adjusted and I exonerate him from all criminal intent on account thereof and the criminal proceedings were started on advice of friends and hastily. (Signed) C. B. Thompson." The defendant testified that this statement contained nothing untrue. At some time during the same morning the plaintiff, at the defendant's request, signed the following paper written by the defendant, and delivered it to the defendant for Thompson: "New Bedford, Jan. 28, 1921. I hereby release Chas. B. Thompson from all liability by reason of he having had me arrested." (The date 1921 is a clerical error for 1922.)

. At the trial the evidence was conflicting as to whether there was any consideration for the release so given by the plaintiff to Thompson. The jury, in answer to a special question submitted to them, and upon instructions to which no exceptions were taken, found that there was no valuable consideration therefor. The exceptions recite that "there was ample evidence of malice on the part of the defendant in prosecuting the plaintiff."

To entitle a plaintiff to recover in an action for malicious prosecution he must prove, among other things, that the proceedings were terminated in his favor. *Sayles* v. *Briggs*, 4 Met. 421. *Bacon* v. *Towne*, 4 Cush. 217. *Cardival* v.

*Smith,* 109 Mass. 158.  *Graves* v. *Dawson,* 130 Mass. 78.
*Langford* v. *Boston & Albany Railroad,* 144 Mass. 431.
*Briggs* v. *Shepard Manuf. Co. Inc.* 217 Mass. 446.

The record recites that there was ample evidence of malice
on the part of the defendant in prosecuting the plaintiff.
The question whether the defendant acted with probable
cause was submitted to the jury.   The judge gave the follow-
ing instruction: "Bannon . . . must prove in the first place
that the prosecution was terminated favorably to him.   In
this case the prosecution was terminated favorably to Mr.
Bannon within the meaning of this rule when it was dis-
missed by the court, even if Mr. Bannon assented to the
dismissal, particularly in view of the document which Mr.
Thompson gave to Mr. Bannon stating to some degree the
reason for the dismissal, so that point is out of the way."
To this instruction and to the refusal of the judge to give the
defendant's fourth and sixteenth requests the defendant
excepted.

In the case of *Langford* v. *Boston & Albany Railroad, supra,*
it was said by Chief Justice Morton, "But our cases uni-
formly hold that, where a *nolle prosequi* is entered by the
procurement of the party prosecuted, or by his consent, or
by way of compromise, such party cannot have an action
for malicious prosecution."   In the application of this rule
of law there can be no sound distinction in principle between
the entry of *nolle prosequi* and the dismissal of a complaint.

The order of dismissal in the District Court in the cir-
cumstances disclosed was equivalent to a *nolle prosequi*
and was not effective as a judgment in favor of the defendant.
"The effect of dismissing a complaint without a trial is like
that of quashing or entering a *nolle prosequi* of an indictment.
By neither of these is the defendant acquitted of the offence
charged against him, but he is only exempted from liability
on that complaint or indictment.  *Commonwealth* v. *Gould,*
12 Gray, 171."   *Commonwealth* v. *Bressant,* 126 Mass. 246,
247.  *Commonwealth* v. *Anderson,* 220 Mass. 142.  *Klous*
v. *Judges of the Municipal Court,* 251 Mass. 292, 295.

A termination of the original proceeding by judgment in
favor of the defendant is an essential element of the proof

offered by a plaintiff in an action for malicious prosecution, and is not merely a subsidiary part of proof of a want of probable cause. For example, it is said in *Shattuck* v. *Simonds*, 191 Mass. 506, 508: "To sustain an action for a malicious prosecution it was incumbent on the plaintiff to offer evidence from which it could be found not only that the prosecution was terminated in his favor, but that it was instituted by the defendant without having probable cause to believe that he was guilty of the crime alleged, and that in causing a complaint to be made charging him with a criminal offence he is actuated by malice." See also *White* v. *Apsley Rubber Co.* 181 Mass. 339, 341; *O'Brien* v. *Barry,* 106 Mass. 300, 303, 304.

The record in this case plainly shows that while the complaints were pending the plaintiff and the defendant had correspondence and conversations "relative to the settlement of the Thompson note and the termination of the criminal proceedings"; that they entered into an agreement which provided that the plaintiff should procure a note, secured by a mortgage upon real estate to be given by Ellen Sullivan to Thompson, upon the termination of the criminal proceedings; that upon such termination the note and mortgage were then delivered to the defendant by the plaintiff; that at the same time Thompson, upon the advice and recommendation of the defendant, gave to the plaintiff the written statement hereinbefore referred to, and on the same morning the plaintiff signed and delivered to the defendant for Thompson a release. These transactions conclusively show that the criminal complaints were dismissed and abandoned by the plaintiff and by the defendant with the agreement and consent of the plaintiff, who was discharged without a trial. It is manifest that in these circumstances there was no such termination of the proceedings in favor of the plaintiff as to entitle him to maintain this action. *Bacon* v. *Towne, supra. Parker* v. *Farley,* 10 Cush. 279. *Coupal* v. *Ward,* 106 Mass. 289. *Graves* v. *Dawson, supra.* See also cases collected in 7 A. & E. Ann. Cas. 454 note.

The instruction excepted to, that the prosecution was terminated favorably to the plaintiff when the complaints

were dismissed with the assent of the plaintiff, could not properly have been given, and the exception thereto must be sustained. The defendant's fourth and sixteenth requests, in substance that there was no evidence that the criminal proceedings had been terminated favorably to the plaintiff, should have been given. The instruction was erroneous, notwithstanding the writing executed and delivered by Thompson to the plaintiff; that writing had no tendency to show that the criminal proceedings had not been terminated with the consent and approval of the plaintiff.

The burden rested on the plaintiff to prove that the proceedings in the District Court were instituted by the defendant without probable cause. In *Stone* v. *Crocker*, 24 Pick. 81, at page 84, it was said, "The *want of probable cause* is the *essential* ground of this action. Other things may be inferred from this. But this cannot be inferred from anything else. It must be established by positive and express proof. It is not enough to show that the plaintiff was acquitted of the charge preferred against him, or that the defendant abandoned the prosecution." This statement of the law was quoted with approval in *Lewis* v. *Goldman*, 241 Mass. 577. When the facts are undisputed, the question whether or not there was probable cause is a question of law for the court to decide. *Parker* v. *Farley, supra. Sartwell* v. *Parker*, 141 Mass. 405. *Casavan* v. *Sage*, 201 Mass. 547. *Lewis* v. *Goldman, supra.* See also collection of cases in 18 R. C. L. 23–26.

In *Sartwell* v. *Parker, supra,* two actions, one brought by the plaintiff against the defendant and the other by the defendant against the plaintiff, which were pending at the same time, were included in one settlement by the parties in which the defendant paid the plaintiff the difference between a portion of the sum sued for by the plaintiff and the amount sought to be recovered by the defendant and judgment was entered for the plaintiff in the action against him. It was held that the plaintiff could not maintain an action against the defendant for malicious prosecution in instituting that action. It was said at page 406, "It thus appears that the plaintiff settled the suit, which he must prove was com-

menced without probable cause, by allowing all that was claimed in it.   A party who terminates a suit by paying what is demanded in it, by being charged with it as an item in account, cannot be admitted to say that the action was commenced without probable cause."   The decision in this case is analogous to the situation presented in the case at bar.   Thompson and his counsel, the defendant, had complained that the plaintiff had fraudulently obtained a loan from Thompson upon worthless security; the plaintiff thereafter paid the amount of the loan by giving Thompson the Sullivan note and mortgage.   In these circumstances it is established that the defendant, in instituting the complaints, acted with probable cause; and this bars recovery although there was evidence of malice on the part of the defendant in instituting the prosecution.   If the defendant acted maliciously, he cannot be charged with liability if he acted with probable cause.   Want of probable cause cannot be inferred from malice, but must be established by positive proof.   *Stone* v. *Crocker, supra.   Lewis* v. *Goldman, supra.*

As there was no evidence warranting a finding that the defendant acted without probable cause in advising the prosecution, the defendant's second request should have been given, and the exception to the refusal to do so must be sustained.

It follows as matter of law that as the criminal proceedings were not terminated in favor of the plaintiff in a manner entitling him to maintain this suit, and as the defendant acted with probable cause, the defendant's motion for a directed verdict should have been allowed.

*Exceptions sustained.*
*Judgment for defendant.*