Randy BRITTON, Plaintiff, Appellee,

v.

Patrick J. MALONEY, Individually and in his official capacity as Police Officer of the City of Boston, Defendant, Appellant.

Randy Britton, Plaintiff, Appellant,

v.

Patrick J. Maloney, Individually and in his official capacity as Police Officer of the City of Boston, Defendant, Appellee.

Nos. 98–2095, 98–2096.

United States Court of Appeals, First Circuit.

Heard Sept. 10, 1999.

Decided Nov. 8, 1999.

Andrea W. McCarthy, with whom Merita A. Hopkins, Christian Na, and David Johnson were on brief, for defendant.

Randy Britton, plaintiff, pro se.

Before BOUDIN, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

Randy Britton filed this lawsuit in order to redress alleged violations of his civil rights that took place after he walked into a police station carrying a rifle in his hands. On motions for summary judgment and for judgment as a matter of law, the district court dismissed many of the defendants and several of the claims made in the case. Ultimately, a jury rendered a verdict against one of the defendants, Patrick Maloney, in the amount of $200,000.00. This appeal followed, in which Maloney seeks to overturn the judgment against him while Britton hopes to revive some of his unsuccessful causes of action. For the reasons set forth below, we affirm in part, reverse in part, and remand for further proceedings.

## I.

### Background

All of the questions before us require that we read the record in the light most favorable to Britton. *See Collazo–Santiago v. Toyota Motor Corp.,* 149 F.3d 23, 27 (1st Cir.1998) (reviewing the grant or denial of judgment as a matter of law by considering the evidence in the light most favorable to the nonmoving party); *St. Hilaire v. City of Laconia,* 71 F.3d 20, 24 (1st Cir.1995) (reviewing the entry of summary judgment by taking the facts in the light most favorable to the nonmoving party).

On June 30, 1990, Britton walked into the headquarters of the Boston Police Department carrying an AR–7 semiautomatic rifle. The first police officer to see him thought that he was a gunman and pushed a panic button on her desk in order to get help. Detective Thomas Dooley confronted Britton, grabbed him, and wrested the rifle away. Although Sergeant Patrick Maloney joined in the fray as well, the situation resolved itself without injury. It turned out that the gun was unloaded and that its stock had been removed.

Britton immediately explained to the officers that he had come inside in order to flee from two people who had been chasing him. Sergeant Maloney concluded that Britton should "go upstairs [with him] and talk about it." He escorted Britton through a metal gateway, up a flight of stairs, and into a squad room for further questioning. Britton adhered to his story throughout the brief interrogation that followed. He also produced a Firearm Identification Card (an "FID card") to validate his possession of the rifle.

After removing an ammunition clip and car keys from Britton's pocket, Detective Dooley left the building to find out more. He began by examining Britton's car and collected some of the items that he found inside, including the stock of the rifle, a box of ammunition, and the registration for the vehicle itself. At some point thereafter, Dooley also interviewed Britton's alleged pursuers, Tammy Loughlin and Tyrone Stampley. They had apparently chased Britton after mistaking him for someone else.

In any event, Maloney and Dooley verified the authenticity of Britton's FID card, determined that he did not have any outstanding warrants against him, and allowed him to leave the police station. At that point, neither Britton, Loughlin, nor Stampley was charged with a crime. None of them was told that they were the subject of a criminal investigation. But when Britton demanded to get his rifle back, Maloney refused, saying that he would have to confiscate it "for safekeeping."

Britton left the station with a copy of Dooley's police report, which purported to document the incident and effectively

served as a receipt for the seizure of the rifle. Still angry at the way that he had been treated, Britton telephoned Maloney that evening, demanded that the gun be returned, and threatened to sue in order to get it back. Maloney refused to release the weapon but offered little explanation as to why he had decided to keep it.

Three days later, on July 3, 1990, Britton returned to the police station, where he confronted Maloney and claimed that the seizure of his rifle had violated his Fourth Amendment rights. Rather than giving the gun back, Maloney informed Britton that he faced criminal charges for using it to assault Loughlin and Stampley. Subsequently, Britton received a summons in the mail, appeared at his arraignment on August 3, 1990, and entered a plea of not guilty to the charges.

Britton's court-appointed attorney moved for a bill of particulars. The prosecution failed to respond to the motion or to pursue the case in any meaningful way. As a result, on September 25, 1990, the Boston Municipal Court dismissed the case in its entirety for want of prosecution. Britton's rifle was returned to him immediately thereafter.

Britton subsequently filed this lawsuit pro se against the City of Boston, the mayor, the police commissioner, and several of the police officers who had been involved at the station. The gravamen of Britton's Amended Complaint was that (1)

the defendants fabricated criminal charges against him in order to penalize him for complaining about the confiscation of his rifle; (2) the defendants took the rifle away without sufficient justification for doing so; and (3) the Boston Police Department's policy on the seizure of firearms is unconstitutional because it directs police officers to seize guns that they encounter without regard to probable cause.

Even though the district court dismissed several of the defendants and many of the claims in the lawsuit on motions for summary judgment and for judgment as a matter of law, Britton's case against Dooley and Maloney went to the jury. Dooley prevailed on all of Britton's claims against him. Maloney, however, was found liable in the amount of $200,000.00 for having "violated [Britton's] federal civil rights by prosecuting him without probable cause and with an unconstitutional motive."[1] The jury also rendered a verdict against Maloney on a variety of parallel state law claims, but awarded $0.00 damages.

Although Britton's lawsuit against the city is still pending, the district court has certified his case against Maloney as a separate and final judgment from which an immediate appeal can be taken. *See* Fed.R.Civ.P. 54(b). Maloney disputes his liability altogether, while in his cross-appeal, Britton seeks to revive some of the claims that the trial court rejected.[2]

1. Britton alleged that Maloney's pursuit of baseless criminal charges against him caused him (1) to suffer emotional distress; and (2) to lose his job as an investment banker. The district court allowed Britton to testify to his emotional distress but precluded him from offering evidence of his alleged economic loss because he failed to produce his tax returns during discovery. *See Britton v. Maloney*, 981 F.Supp. 25, 34 n. 17 (D.Mass.1997). As a result, the jury's award of damages only reflected the emotional distress that Britton sustained. Britton has not appealed the district court's decision to limit his recovery in this way.

2. Rule 54(b) of the Federal Rules of Civil Procedure permits the entry of a separate, appealable judgment when there is "no just

reason for delay." Fed.R.Civ.P. 54(b). The propriety of an immediate appeal under Rule 54(b) turns on a number of factors, including (1) whether the disputed ruling is final; (2) whether the disputed ruling raises legal or factual issues that overlap with any claims that remain pending in the district court; and (3) how the equities and efficiencies of piecemeal review would compare to those in a single proceeding. *See Credit Francais Int'l, S.A. v. Bio–Vita, Ltd.*, 78 F.3d 698, 706 (1st Cir.1996). Because Britton's case against Maloney is now complete, because the issues that it raises are analytically distinct from those in Britton's case against the city, and because there is little risk of prejudice from immediate appellate review, we accept the district court's certification under Rule 54(b).

## II.

We consider Maloney's assignments of error first. Maloney begins by arguing that the district court erred in denying his motion for judgment as a matter of law with respect to Britton's constitutional malicious prosecution claim. De novo review is required. *See Collazo–Santiago v. Toyota Motor Corp.,* 149 F.3d 23, 27 (1st Cir. 1998). We evaluate the evidence in the light most favorable to Britton, drawing every reasonable inference in his favor. *See id.*

 Britton's constitutional malicious prosecution claim turned on the theory that Maloney's pursuit of unfounded criminal charges against him violated his Fourth Amendment rights. Although a plurality of the Supreme Court has concluded that the Due Process Clause of the Fourteenth Amendment does not provide a substantive right to be free from criminal prosecutions unsupported by probable cause, the Court has "express[ed] no view" as to whether the burden of baseless criminal charges might effect an unlawful "seizure" and thereby trigger a Fourth Amendment claim. *Albright v. Oliver,* 510 U.S. 266, 274–75, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion).

Every circuit to have considered the question since *Albright* has expressed general agreement with the view that state actors who pursue malicious prosecutions against others may be held to have violated the Fourth Amendment, thereby risking the imposition of liability under 42 U.S.C. § 1983.[3] We have yet to confront the issue directly, *see Meehan v. Town of Plymouth,* 167 F.3d 85, 88 (1st Cir.1999) ("[T]here is a possibility that Meehan's § 1983 malicious prosecution claim may be actionable under the Fourth Amendment."); *Roche v. John Hancock Mut. Life*

*Ins. Co.,* 81 F.3d 249, 256 n. 5 (1st Cir. 1996) ("[W]e need not explore this virgin territory."), and need not do so here. We will simply assume, for the purposes of the analysis, that the type of conduct which constitutes a malicious prosecution under state law can sometimes constitute a violation of the Fourth Amendment as well. *Cf. Carey v. Piphus,* 435 U.S. 247, 258, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) ("In some cases, the interests protected by a particular branch of the common law of torts may parallel closely the interests protected by a particular constitutional right."). Even if we take this assumption to be true, we do not believe that Maloney's pursuit of baseless criminal charges violated Britton's Fourth Amendment rights in this case.

To acknowledge similarities between a malicious prosecution claim and a Fourth Amendment claim is not to say that the two causes of action are identical in every respect, or that proof of the former will always suffice as proof of the latter. After all, the Fourth Amendment does not speak of unreasonable "prosecutions," and instead refers only to unreasonable "searches and seizures." U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and *seizures,* shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be *seized.*" (emphasis added)). For a state actor to violate the Fourth Amendment by initiating a malicious prosecution against someone, the criminal charges at issue must have imposed "some deprivation of liberty consistent with the concept of [a] 'seizure.'" *Singer,* 63 F.3d at 116. The crux of the inquiry is whether a "seizure"

---

3. *See Evans v. Ball,* 168 F.3d 856, 860–61 (5th Cir.1999); *Spurlock v. Satterfield,* 167 F.3d 995, 1005–06 (6th Cir.1999); *Gallo v. City of Philadelphia,* 161 F.3d 217, 221–22 (3d Cir. 1998); *Uboh v. Reno,* 141 F.3d 1000, 1003 (11th Cir.1998); *Brooks v. City of Winston–* *Salem,* 85 F.3d 178, 183–84 (4th Cir.1996); *Taylor v. Meacham,* 82 F.3d 1556, 1561 (10th Cir.1996); *Singer v. Fulton County Sheriff,* 63 F.3d 110, 114–16 (2d Cir.1995); *Smart v. Board of Trustees of the Univ. of Illinois,* 34 F.3d 432, 434 (7th Cir.1994).

occurred, for as we have stated before, "the essential elements of actionable section 1983 claims derive first and foremost from the Constitution itself, not necessarily from the analogous common law tort." *Calero–Colon v. Betancourt–Lebron,* 68 F.3d 1, 4 (1st Cir.1995).

Expressed differently, the constitutional violation lies in the "deprivation of liberty accompanying the prosecution" rather than in the prosecution itself. *Gallo,* 161 F.3d at 222. In many cases, this is a distinction without a difference because the filing of criminal charges triggers the issuance of a warrant which leads to an arrest and thereby effects a "seizure" within the meaning of the Fourth Amendment. *See Taylor,* 82 F.3d at 1561 n. 5 ("In this particular case ... the 'seizure' issue is fairly straightforward, because Mr. Taylor remained in detention, and therefore effectively 'seized,' throughout the time period in question."). But here, Britton was never arrested or detained on the underlying criminal charges that form the basis of his malicious prosecution claim. After Maloney filed the criminal complaint against him, Britton received a summons in the mail. No warrant was required to secure his appearance at the hearings in his case. Against this background, the narrow question before us is whether a state actor effects a "seizure" within the meaning of the Fourth Amendment by filing baseless criminal charges against someone, even when those charges never cause the respondent to be arrested or detained.

Having considered the question in some detail, the Second, Third, and Fifth Circuits have concluded that something less than forcible detention will suffice to constitute a seizure. *See Evans,* 168 F.3d at 860–61 (holding that a seizure occurred because the plaintiff "was fingerprinted, photographed, forced to sign a personal recognizance bond, and required to report regularly to pretrial services, to obtain permission before leaving the state, and to provide federal officers with financial and identifying information"); *Gallo,* 161 F.3d at 222 (holding that the conditions of pretrial release effected a seizure because the plaintiff was required "to post a $10,000 bond ... to attend all court hearings ... to contact Pretrial Services on a weekly basis, and ... [to refrain] from traveling outside New Jersey and Pennsylvania"); *Murphy v. Lynn,* 118 F.3d 938, 946 (2d Cir.1997) (concluding that the obligation to appear in court in connection with criminal charges, coupled with restrictions on interstate travel, amounted to a seizure), *cert. denied,* 522 U.S. 1115, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998).

But unlike in *Evans, Gallo,* and *Murphy,* Britton's criminal prosecution in this case did not impose any restrictions on his liberty other than the legal obligation to appear in court at a future date. As we have stated, Britton merely received a summons in the mail. He was never arrested on the charges at issue. Nothing in the record indicates that he had to post a bond or to limit his travel before the ultimate hearing in which those charges were dismissed for want of prosecution. Although Britton contends that the summons alone constituted a seizure because it threatened him with arrest if he failed to appear, *see Albright,* 510 U.S. at 279, 114 S.Ct. 807 (Ginsburg, J., concurring) ("Such a defendant is scarcely at liberty ... so long as he is bound to appear in court and answer the state's charges."), there is no controlling authority on point. Several circuits have expressly declined to reach the issue. *See Whiting v. Traylor,* 85 F.3d 581, 584 (11th Cir.1996); *Nesmith v. Taylor,* 715 F.2d 194, 196 (5th Cir.1983) (per curiam).

 In our view, the Supreme Court's Fourth Amendment jurisprudence belies Britton's claim that he was seized. The use of force is certainly not required to effect a seizure. A mere "show of authority" can suffice. *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). But *Terry* cannot be read to mean that the issuance of a summons (any more

than a testimonial subpoena or a call to jury duty) would constitute a seizure simply because it threatens a citizen with the *possibility* of confinement if he fails to appear in court. As the Court's more recent decisions make clear, neither the use of physical force nor a show of authority amounts to a seizure unless it results in the "intentional *acquisition* of physical control" over the subject and causes a "termination of [his] freedom of movement." *Brower v. County of Inyo,* 489 U.S. 593, 596–97, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (emphasis added). In order for a seizure to occur, the subject must "yield" to the assertion of authority over him and thereby have his liberty restrained. *See California v. Hodari D.,* 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

Absent any evidence that Britton was arrested, detained, restricted in his travel, or otherwise subject to a deprivation of his liberty before the charges against him were dismissed, the fact that he was given a date to appear in court is insufficient to establish a seizure within the meaning of the Fourth Amendment. *Cf. DePiero v. City of Macedonia,* 180 F.3d 770, 789 (6th Cir.1999) (concluding that the issuance of a traffic citation did not effect a seizure until the plaintiff failed to appear in court and was served with a bench warrant), *cert. denied,* —— U.S. ——, 120 S.Ct. 844, —— L.Ed.2d —— (2000). As a result, we conclude that Maloney was entitled to judgment as a matter of law on Britton's constitutional malicious prosecution claim.

### III.

Maloney contends that the district court also erred in refusing to grant judgment as a matter of law against Britton on his state law malicious prosecution claim. De novo review applies. *See Collazo–Santiago v. Toyota Motor Corp.,* 149 F.3d 23, 27 (1st Cir.1998).

In order to recover for malicious prosecution, Massachusetts requires a plaintiff to prove "that [the defendant] instituted criminal proceedings against [him] with malice and without probable cause and that those proceedings terminated in [his] favor." *Correllas v. Viveiros,* 410 Mass. 314, 572 N.E.2d 7, 10 (1991) (citing *Beecy v. Pucciarelli,* 387 Mass. 589, 441 N.E.2d 1035, 1038 (1982)). Successful termination of the underlying action is a "threshold requirement" of the claim. *Cole v. Pulley,* 18 Mass.App.Ct. 950, 468 N.E.2d 652, 653 (1984). Maloney contends that Britton's malicious prosecution action was facially deficient in this regard because the criminal charges against him were dismissed for want of prosecution without any inquiry into the merits.

Massachusetts courts historically regarded malicious prosecution claims with disfavor because of their "tendency to deter men who know of breaches of the law, from prosecuting [the] offenders." *Cloon v. Gerry,* 79 Mass. 201, 202 (1859). Consistent with this view, Massachusetts law held plaintiffs strictly to each element of the cause of action. *See Stone v. Crocker,* 41 Mass. 81, 83, 1832 WL 2599 (1833) (warning that the "true principles" of a malicious prosecution claim must be "strictly adhered to"). In order to establish that the underlying proceedings terminated in his favor, a plaintiff who sought to recover for malicious prosecution had to show that he prevailed in an actual adjudication on the merits. *See Bacon v. Towne,* 58 Mass. 217, 235 (1849) ("It must appear, before this action will lie, that the defendant in the indictment has been fully acquitted...."). A nolle prosequi was insufficient proof of successful termination, as was the dismissal of a complaint before trial. *See Bannon v. Auger,* 262 Mass. 427, 160 N.E. 255, 258 (1928) (" 'The effect of dismissing a complaint without a trial is like that of quashing or entering a nolle prosequi of an indictment. By neither of these is the defendant acquitted of the offence charged against him, but he is only exempted from liability on that complaint or indictment.' " (quoting *Commonwealth*

*v. Bressant,* 126 Mass. 246, 247, 1879 WL 12334 (1879))).

But in *Wynne v. Rosen,* the Supreme Judicial Court abandoned its long-established rule and held that a prosecutor's decision to nolle prosequi a case or to move to dismiss would demonstrate successful termination of the underlying action as long as the circumstances "compel[led] an inference that there existed a lack of reasonable grounds to pursue the prosecution." 391 Mass. 797, 464 N.E.2d 1348, 1351 (1984). In adopting the position taken by virtually every other jurisdiction to have addressed the issue, the court concluded that a criminal defendant should not have to risk a trial on the merits simply to preserve his ability to sue for malicious prosecution later. *See id.* at 1352; *see also Loeb v. Teitelbaum,* 77 A.D.2d 92, 432 N.Y.S.2d 487, 494 (App.Div. 1980) ("[T]he societal interest [against malicious prosecution claims] cannot extend so far as to compel individuals charged with criminal offenses—and who may desire civil retribution—to resist dismissal of the charges against them in the face of the prosecutor's failure to prosecute and the court's desire to dismiss the complaints."), *modified on other grounds,* 80 A.D.2d 838, 439 N.Y.S.2d 300 (1981), *quoted in Wynne,* 464 N.E.2d at 1352.

The circumstances surrounding Britton's case are admittedly somewhat unique because the criminal charges against him were dismissed by the court for want of prosecution. But as the *Wynne* decision at least suggests, the fact that a criminal prosecution is dismissed by a trial judge instead of nol prossed by a district attorney makes little difference, *see Wynne,* 464 N.E.2d at 1350 n. 2 ("[W]e would reach the same result under either banner."), as long as the circumstances remain consistent with the innocence of the accused. Drawing every inference in Britton's favor (as

we must in reviewing the denial of Maloney's motion for judgment as a matter of law), we agree with the district court that Britton terminated his criminal case with success and under circumstances that reflect his innocence.

The facts that support this conclusion are readily apparent. After producing an FID card for his rifle, Britton was able to leave the police station a free man. He was given a copy of a report that purported to include "all the important facts" and that said nothing about an alleged assault, even though Dooley and Maloney had already interviewed Loughlin and Stampley by then.[4] Maloney spoke with Britton over the telephone that evening and never indicated that the rifle was part of a criminal investigation into Britton's conduct. It was only after Britton returned to the station and heatedly demanded the rifle again that Maloney informed him of the charges. Nevertheless, the prosecution could not provide a bill of particulars to support the criminal complaint. Stampley ultimately denied that Britton had assaulted him and denied ever making such a claim to the police.

When viewed as a whole, these facts permitted the jury to conclude that (1) Maloney filed the charges as a retaliatory response to Britton's bothersome insistence on getting his rifle back; (2) the prosecution declined to pursue the charges because they were baseless; and (3) the criminal complaint was dismissed accordingly. Against this background, we conclude, like the district court, that Britton's criminal prosecution terminated in his favor within the meaning of Massachusetts law. The district court properly denied Maloney's motion for judgment as a matter of law on Britton's state law malicious prosecution claim.

---

4. Maloney tried to contradict Dooley by claiming that they did not interview Loughlin and Stampley until later—which would have explained why it took several days to bring charges against Britton. As the district court

observed, the inconsistency between the officers' testimony provides inferential support for the conclusion that the charges against Britton were baseless and that the criminal case was dismissed because he was innocent.

## IV.

◼ We now face a very unusual problem. The jury found in Britton's favor on both his federal constitutional claim (which we have rejected) and his state law malicious prosecution claim (which we have upheld). But the jury awarded Britton $200,000.00 for the former and $0.00 damages for the latter.[5] Because we have set aside the jury's determination of liability on the only claim for which it awarded damages, while upholding its determination of liability on a claim for which no damages were given, it might be argued that Britton is not entitled to any recovery for the wrongful initiation of criminal proceedings against him.

But it appears that at trial, neither party attempted to distinguish between the damages that Britton allegedly suffered because of the purported seizure challenged in his federal constitutional claim and the malicious prosecution complained of under state law. A further complication arose when the district judge included the following charge to the jury:

> By the way, the plaintiff is not entitled to double recovery. Therefore, if you award him damages for his suffering from, for the constitutional claim, the 1983 claim, you may not award more damages under the common law claim. In other words, all of these are allegations that pertain to the same damages. And you can't award double damages for each of these violations....

Although there is no way to prove the point, it is highly likely that the jury failed to award damages on the state law malicious prosecution claim because it thought that any additional recovery would duplicate the damages that it had already awarded for the alleged violation of Britton's Fourth Amendment rights.

The problem of guarding against double recovery is a familiar one when multiple claims exist but separate damages on each would be partly or wholly duplicative. If the parties explicitly agree that the damages should be the same on each claim, then it is easy enough to construct special interrogatories that identify separate bases for liability but have only a single line for damages. *See, e.g., Stewart & Stevenson Servs., Inc. v. Pickard,* 749 F.2d 635, 644–45 (11th Cir.1984). On the other hand, when the amounts awarded could conceivably differ depending on the claim but may also involve some overlap, verdict forms sometimes require a separate specification of damages for each claim on which the jury determines liability, leaving it to the judge to make the appropriate adjustments to avoid double recovery. *See, e.g., Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 451 n. 3, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993).

Rather than pursuing either of these options in this case, the district court gave an instruction whose literal effect was to prevent the jury from awarding any state law damages at all once it awarded damages on the federal constitutional claim. Although it would have taken considerable sophistication for a pro se litigant to foresee the problem, Britton arguably should have objected to this instruction before the jury was discharged. Without a contemporaneous objection to preserve the issue on appeal, we can only reverse for "plain error," *M & I Heat Transfer Prods., Ltd. v. Gorchev,* 141 F.3d 21, 23 (1st Cir.1998) (citing *Parker v. City of Nashua,* 76 F.3d 9, 14 (1st Cir.1996)), under standards that are very high even in criminal cases, *see United States v. Olano,* 507 U.S. 725, 733–37, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Pro se plaintiffs are not ordinarily judged by any different standards.

Yet in this instance, and with appropriate regard for the very unusual circumstances of this case, we think that the error is clear and that prejudice is almost

---

**5.** The jury also found in Britton's favor on state law claims for abuse of process and violations of his civil rights, with $0.00 damages for each. Neither claim is at issue in this appeal.

certain. *See Drohan v. Vaughn*, 176 F.3d 17, 21 (1st Cir.1999). Under the plain error test, the remaining question is whether this is the extremely rare case in which it can fairly be said that the result would create a miscarriage of justice or undermine the integrity of the judicial process. *See id.* We think that this is such a case, for in resolving conflicting evidence on liability, the jury effectively determined that Maloney initiated criminal proceedings against Britton without a legitimate basis. Its award of damages on the federal constitutional claim establishes without doubt that whether Maloney's conduct is described as a violation of federal or state law, he caused Britton to suffer substantial emotional distress.

At the same time, we cannot say with absolute certainty that absent the error, the jury would have awarded Britton damages on the malicious prosecution claim. Wrongful seizures and wrongful prosecutions are not identical concepts. We are even less sure that the jury would have awarded Britton exactly $200,000.00 if it had focused its attention solely on his state law claims. For us to order Maloney to pay that amount despite these uncertainties could conceivably run afoul of his Seventh Amendment rights. *See Hetzel v. Prince William County*, 523 U.S. 208, 118 S.Ct. 1210, 1211–12, 140 L.Ed.2d 336 (1998) (per curiam) (citing, inter alia, *Dimick v. Schiedt*, 293 U.S. 474, 486, 55 S.Ct. 296, 79 L.Ed. 603 (1935)).

The parties have not provided us with any argument or authority on how to handle the problem. But in our view, the best resolution of the error is to direct a new trial on damages pursuant to our general authority to fashion a remand in the interest of justice. *See* 28 U.S.C. § 2106. The new trial shall be limited to determining compensatory damages for the emotional distress that Britton suffered because of the initiation of baseless charges against him. *See supra* note 1. In the interest of fairness, neither party will be allowed to conduct further discovery or to present new kinds of evidence or additional witnesses not offered during the original trial, to prove or rebut these damages.

## V.

We must now consider whether the district court erroneously granted summary judgment and judgment as a matter of law against Britton on some of his other causes of action. We review these decisions de novo. *See St. Hilaire v. City of Laconia*, 71 F.3d 20, 24 (1st Cir.1995) (applying de novo review to the grant of summary judgment pursuant to Fed.R.Civ.P. 56); *Collazo–Santiago v. Toyota Motor Corp.*, 149 F.3d 23, 27 (1st Cir.1998) (applying de novo review to the entry of judgment as a matter of law pursuant to Fed.R.Civ.P. 50).

## A.

■ Britton's attempt to revive Counts 1, 12, and 14 of the Amended Complaint can be disposed of in short order. The district court only certified Britton's case against Maloney as a separate and final judgment from which an immediate appeal could be taken. *See* Fed.R.Civ.P. 54(b). But Count 1 of the Amended Complaint does not implicate Maloney at all. It alleges instead that the City of Boston, the mayor, and the police commissioner are liable for maintaining an unconstitutional policy with respect to the seizure of firearms. With Britton's case against the city still pending, the district court's decision to grant summary judgment against him on Count 1 falls outside the scope of the instant appeal.

Nor does the district court's decision to enter summary judgment against Britton on Counts 12 and 14 of the Amended Complaint relate to Maloney either. These causes of action seek to hold an unidentified police officer and his "co-conspirators" liable for the seizure of Britton's ammunition clip, car keys, rifle stock, a box of ammunition, and a motor vehicle registration. Britton admitted at trial that

it was someone other than Maloney who removed the ammunition clip and car keys from his pocket. He offered no evidence to suggest that Maloney was responsible for taking the other items. As the district court noted when ruling on Maloney's post-trial motion for judgment as a matter of law, it was Dooley who removed those other items from Britton's car. *See Britton v. Maloney*, 981 F.Supp. 25, 32 (D.Mass.1997).

### B.

Having narrowed the issues before us, we turn to whether the district court properly granted judgment as a matter of law against Britton on Counts 8 and 10 of the Amended Complaint. Count 8 seeks to hold Maloney and others liable for "falsely imprison[ing] [Britton] and depriv[ing] him of his constitutional right to be free from a deprivation of liberty without due process of law." Although the wording of this claim arguably implicates the right to procedural due process under the Fourteenth Amendment, Britton's appeal focuses entirely on whether the conduct complained of violated his Fourth Amendment rights. Britton contends that Maloney detained him at the police station against his will and that even after being allowed to leave, he effectively had to remain at the station if he wanted to get his rifle back.

Maloney arguably seized Britton by asking him to go to the second floor of the police station for questioning. Dooley had grabbed Britton's rifle out of his hands just moments earlier. Maloney arrived on the scene and asked Britton what had happened. After listening to his initial response, Maloney replied: "[L]et's go upstairs and talk about it." They proceeded through a metal gateway, up a flight of stairs, and into a squad room for questioning. At that point, perhaps no reasonable person would have felt free to leave. *See Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). A jury could find that Britton submitted to Maloney's assertion of authority over him, and thereby endured a seizure within the meaning of the Fourth Amendment. *See United States v. Sealey*, 30 F.3d 7, 10 (1st Cir.1994).[6]

But it is equally apparent that if this was a seizure, Maloney was justified in effecting it. Britton entered the police station carrying an AR–7 rifle in his hand. The first officer to spot him thought that he was a gunman and pushed a panic button on her desk to get help. Dooley responded to this call for assistance by wresting Britton's rifle away. Maloney saw the ensuing struggle, joined in the fray, and clearly had probable cause to believe that some sort of crime had occurred.[7] *Cf. Astrada v. Howard*, 979 F.Supp. 90, 96 (D.Conn.1997) (concluding that the police lawfully detained someone who walked into a police station with a loaded smoking gun, and that "had they decided to arrest [him], their decision to do so would ... have been supported by probable cause"), *aff'd*, 152 F.3d 917 (2d Cir.1998) (unpublished table decision).

At that point, it was appropriate for Maloney to detain Britton for further questioning while his rifle was inspected, his FID card was examined, and a check for any outstanding warrants against him was performed. As soon as Britton had

---

**6.** Britton was questioned about his rifle and released long before he was charged with assaulting Loughlin and Stampley. He was never arrested, detained, or otherwise deprived of his liberty *pursuant* to the assault charges once they were filed. In other words, even though Britton was detained at one point with respect to his possession of the rifle, he cannot argue that Maloney's subsequent decision to pursue baseless charges against him for assault *resulted in* a "seizure" for the purposes of his constitutional malicious prosecution claim. *See supra* pt. II.

**7.** Although it turned out that the rifle was unloaded and that its stock had been removed, neither of these facts was necessarily apparent from the start. The police officers had cause for concern in any event, because Britton had an ammunition clip in his pocket.

explained himself and the circumstances of the incident were sufficiently understood, Maloney allowed him to leave.[8] With these facts in mind, we cannot say that Maloney's decision to question Britton violated his Fourth Amendment rights. *See Elkins v. United States,* 364 U.S. 206, 222, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) ("[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures.").

■ Britton's claim that Maloney effectively forced him to stay at the station is equally untenable. Maloney admittedly decided to retain Britton's rifle "for safekeeping." But as Maloney observed during his testimony, his refusal to return the rifle "didn't mean [Britton] couldn't get it back at some other point in time by going through the department['s] procedures." Unlike an airline passenger who might need his luggage in order to continue traveling, *see United States v. Place,* 462 U.S. 696, 708–09, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), Britton simply could have left and demanded the rifle back later—especially because he had a receipt in hand. Because the seizure of his property did not amount to a seizure of his person, the district court properly granted judgment as a matter of law against Britton on Count 8 of the Amended Complaint.

### C.

■ Count 10 of the Amended Complaint alleges that the seizure of the barrel and the action of the rifle itself violated Britton's "constitutional right to be free from [an] unreasonable seizure of property without due process." As with Count 8, Britton's appeal focuses entirely on whether the conduct complained of violated his Fourth Amendment rights, even though the language of the claim arguably implicates the right to procedural due process under the Fourteenth Amendment. Brit-

ton contends that the confiscation of his gun constituted a "seizure" that unduly interfered with his "possessory interests in that property." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (observing that the Fourth Amendment protects both the privacy interests implicated by a "search" as well as the possessory interests implicated by a "seizure").

At oral argument, Britton all but conceded that the initial seizure of the rifle was constitutionally valid, and we have little trouble reaching that conclusion. Britton walked into the police station carrying a firearm in his hands. The first officer to see him reasonably thought that he was a gunman. Dooley and Maloney justifiably took the weapon away in order to defuse what they perceived as a threat to their safety and the safety of those around them. *See United States v. Donlin,* 982 F.2d 31, 34 (1st Cir.1992) (concluding that the need to protect public safety posed exigent circumstances justifying the warrantless seizure of a shotgun). As a result, the only issue before us is whether Maloney violated the Fourth Amendment by confiscating the rifle "for safekeeping" after the perceived "emergency" had been defused and Britton was allowed to leave.

We are told that under Boston Police Department Rule 311, a firearm that comes into the possession of a police officer while on duty must be submitted to a ballistics unit for testing. Although Britton is elsewhere challenging the constitutionality of this rule, the notion that Maloney's retention of the rifle constitutes an independent violation of the Fourth Amendment would seem to us to trivialize the gravity of constitutional torts, especially when only three days elapsed between the time that Maloney seized the rifle and the time that it became evidence in a pending criminal proceeding. There are

---

**8.** Britton walked into the police station at about 5:20 PM. By 6:15 PM, Dooley had already prepared a report that documented what had happened. Although we do not

know exactly how long Britton's interrogation lasted, it occurred entirely within the 55 minute span between his arrival and his departure.

many instances in which the lawful seizure of property necessarily results in a brief delay before its return. It makes little sense to treat each of those delays as an actionable violation of the Fourth Amendment. *See Towers v. City of Chicago,* 173 F.3d 619, 629 n. 7 (7th Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 178, —— L.Ed.2d —— (1999). We therefore sustain the district court's dismissal of this claim.

## VI.

### Conclusion

For the foregoing reasons, we affirm in part, reverse in part, and remand this case for further proceedings consistent with this opinion. Each party shall bear his own costs.

***Affirmed in part, reversed in part, and remanded for further proceedings. Each party to bear his own costs.***