Blaisdell v. Rochester                    CV-02-399-M    10/24/03
                    UNITED STATES DISTRICT COURT

                       DISTRICT OF NEW HAMPSHIRE


George Blaisdell,
      Plaintiff

      v.                                   Civil No. 02-399-M
                                           Opinion No. 2003 DNH 182
City of Rochester,
      Defendant


                          O R D E R


      Over the years, George Blaisdell has been involved in
several disputes with the City of Rochester.  Most often, it
appears, those disputes involved various land use issues and
alleged takings of real or personal property.  See, e.g.,
Blaisdell v. City of Rochester, No. 03-138-JD, 2003 DNH 113
(D.N.H. June 30, 2003); Blaisdell v. City of Rochester, No. 97-
82-M (D.N.H. Oct. 19, 1999); Blaisdell v. City of Rochester, 135
N.H. 589 (1992).  This is another such case.


      Blaisdell brings this action pursuant to 42 U.S.C. § 1983,
seeking damages for what he says was an unconstitutional taking
of his personal property without just compensation.  He also
advances various state law causes of action for intentional

infliction of emotional distress, malicious prosecution, and abuse of process. The City of Rochester asserts that it is entitled to judgment as a matter of law as to each of Blaisdell's claims and, therefore, moves for summary judgment. Blaisdell objects.

## Standard of Review

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

2

Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted). As the Court of Appeals for the First Circuit has observed, "the evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial. Conclusory allegations, improbable inferences, and unsupported speculation will not suffice." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997) (citations and internal quotation marks omitted).

The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with evidence that conflicts with that proffered by the moving party. See generally Fed. R. Civ. P. 56(e). Consequently, while a reviewing court must take into account all properly documented facts, it may ignore bald assertions, unsupported conclusions, and mere

speculation.  <u>See</u> <u>Serapion v. Martinez</u>, 119 F.3d 982, 987 (1st Cir. 1997).

**Background**

Viewing the record presently before the court in the light most favorable to Blaisdell, the material facts appear as follows.

I.   <u>The Sidewalk Obstructions</u>.

Blaisdell owns a split-level ranch home in a residential neighborhood where he operates what he calls a "plant farm/garden center."  Complaint at para. 3.  During the summer of 1999, the City received a number of complaints about obstructions that Blaisdell had placed on the sidewalk in front of his property. In July of that year, while driving past Blaisdell's property, a Rochester Police Officer observed that the sidewalk in front of the property was partially obstructed by a number of boxed plants and a watering device.  The officer photographed the scene, <u>see</u> Exhibit H to defendant's memorandum, informed Blaisdell that he could not obstruct a city sidewalk, and instructed him to remove his personal property.  Otherwise, the officer said he would have

4

no choice but to issue Blaisdell a citation for violating a local ordinance that prohibits such conduct.  See Exhibit C to defendant's memorandum, Affidavit of Captain Douglas Donlon; Exhibit D, Police Report filed by Captain Donlon.  See also Exhibit E, Rochester City Ordinance 15.8 and 15.11 (prohibiting citizens from obstructing city sidewalks).  Blaisdell complied.

The following day, however, the officer returned to the scene and noticed that the sidewalk was again partially obstructed by Blaisdell's plants and gardening accessories. Again, he photographed the scene.  See Exhibit M to defendant's memorandum.  He also observed a jogger who was forced off the sidewalk and into the road by the obstructions placed by Blaisdell on the sidewalk - a situation the officer reasonably viewed as a safety hazard.  The officer then obtained a sworn statement from one of Blaisdell's neighbors, who complained about Blaisdell having repeatedly placed his personal belongings, as well as a sign pertaining to his business, on the sidewalk.  See Exhibit G to defendant's memorandum.

5

The next day, Blaisdell was served with a summons for having violated the local ordinance that prohibits citizens from placing obstructions on city sidewalks. Although the officer also had an arrest warrant for Blaisdell, he did not take him into custody. The officer did, however, instruct Blaisdell to permanently remove all obstructions from the city sidewalk for safety reasons. He informed Blaisdell that if he did not comply, or if he returned his personal belongings to the sidewalk at some later point, city workers would be called upon to remove them. See Exhibit D to defendant's memorandum, police report filed by Captain Douglas Donlon.

The City continued to receive complaints about Blaisdell's practice of placing plant boxes, watering equipment, signage, and other materials on the sidewalk. See, e.g., Exhibit J to defendant's memorandum, letter of Colin and Gail Claffey. See also Exhibit K, affidavit of Officer Anthony Macaione, Jr.; Exhibit L, police reports submitted by Officer Macaione. On August 23, 1999, two city police officers observed that the sidewalk in front of Blaisdell's property was again obstructed. The officers concluded that Blaisdell was again in violation of

6

the ordinance prohibiting citizens from obstructing sidewalks with personal property and/or signs. The officers could not locate Mr. Blaisdell, but instructed one of his employees to remove the materials from City property.

The following day, Officer Macaione returned to Blaisdell's property and reported that the situation was worse. He contacted an employee of the City's Department of Public Works, who responded to the scene and confirmed the boundary markers of the sidewalk, as well as the fact that Blaisdell's boxed plants, hose, and a water-filled drum were all on City property. Officer Macaione documented the fact that Blaisdell's personal property was again obstructing the city sidewalk by photographing the scene. Then, concluding that the situation presented a potential safety hazard to pedestrians, he had city workers clear the sidewalk. When he was unable to locate Blaisdell, Officer Macaione says he left a note in which he informed Blaisdell that he was again in violation of the local ordinance, told him that city workers had cleared the sidewalk and taken some of his plants to the department of public works, and explained how he could retrieve those plants. On August 28, Officer Macaione

served Blaisdell with two additional summonses for violations of the city ordinance that he had observed on August 23 and 24.

II.  Blaisdell's Theft of Services.

On December 18, 1999, Rochester police officers observed Blaisdell and a companion dumping trash into a dumpster owned or leased by one of the local schools.  See generally Exhibits P, Q, and R to defendant's memorandum.  The officers spoke with Blaisdell, who, they say, admitted that he did not have permission to dump trash into the school's dumpster.  The officers then arrested Blaisdell for theft of services and brought him to the station for questioning.  He was subsequently released on a personal recognizance bond.

III. The Criminal Prosecutions.

In July of 2000, the theft of services charge against Blaisdell was dropped, when the arresting officers were unavailable to testify.  See Exhibit U to defendant's memorandum, affidavit of Diane Dubay, prosecutor for the City of Rochester.

With regard to the three charges that Blaisdell violated the City's ordinance by obstructing the sidewalk with personal property, Blaisdell entered into a plea agreement. In exchange for his agreement to enter a plea of nolo contendere to the charge that he violated the ordinance on August 23, 1999, the City dropped the other two charges (i.e., those alleging violations of the same ordinance on July 21 and August 24, 1999). The court found Blaisdell guilty of the sole remaining charge and fined him $100.

Blaisdell was also prosecuted for two other violations of the same city ordinance, which occurred in May of 2001. He was, again, found guilty. See Exhibit U to defendant's memorandum, affidavit of Diane Dubay.

## Discussion

In his complaint, Blaisdell advances two federal causes of action: first, that the City unconstitutionally took his personal property (i.e., his plants) without due process and just compensation (count two); and second, that the City maintained an unconstitutional custom or practice of violating his

constitutional rights, as well as an official policy of inadequately training its police officers (count three). The remaining counts in his complaint advance various state law theories of recovery, including conversion, intentional infliction of emotional distress, and malicious prosecution, over which Blaisdell asks the court to exercise supplemental jurisdiction.

I. <u>Count Two - Unconstitutional Taking Without Due Process</u>.

The claim advanced in count two of Blaisdell's complaint is virtually identical to one he pursued in an earlier, unrelated federal case he brought against the City. <u>See</u> <u>Blaisdell v. City of Rochester</u>, No. 97-82-M. There, Blaisdell alleged that the City had unconstitutionally deprived him of personal property without due process and just compensation when, after a fire destroyed a home in which Blaisdell had been storing some personal property, the fire marshal ordered the property's owner (the City) to raze the building. In granting the City's motion for summary judgment, the court explained:

> The court (DiClerico, J.) recently addressed the elements of a viable claim, under 42 U.S.C. § 1983, for deprivation of procedural due process.

10

> To state a Fourteenth Amendment procedural
> due process claim based on the deprivation of
> a property interest, the plaintiff must
> allege first that it has a property interest
> as defined by state law and second, that the
> defendants, acting under color of state law,
> deprived it of that property interest without
> constitutionally adequate process.  To
> determine whether a constitutional violation
> has occurred, it is necessary to ask what
> process the State provided, and whether it
> was constitutionally adequate.  Therefore, to
> state a viable claim, a plaintiff must allege
> the unavailability of constitutionally-
> adequate remedies under state law.

Blaisdell v. Rochester, No. 97-82, slip op. at 5-6 (D.N.H. Jan. 4, 1999) (quoting Giant Lift Equip. Manufacturing Co., Inc. v. Town of North Hampton, No. 97-470-D, slip op. at 8 (D.N.H. November 17, 1998) (footnote omitted)).  See also Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194 n.13 (1985) ("[B]ecause the Fifth Amendment proscribes takings without just compensation, no constitutional violation occurs until just compensation has been denied.  The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action.") (emphasis in original).

11

As Justice O'Connor observed in her concurring opinion in

Hudson v. Palmer, 468 U.S. 517 (1984):

> Of course, a mere allegation of property deprivation
> does not by itself state a constitutional claim under
> either [the Due Process or Takings] Clause.  The
> Constitution requires the Government, if it deprives
> people of their property, to provide due process of law
> and to make just compensation for any takings.  The due
> process requirement means that government must provide
> to the [claimant] the remedies it promised would be
> available.  Concomitantly, the just compensation
> requirement means that the remedies made available must
> adequately compensate for any takings that have
> occurred.  <u>Thus, in challenging a property deprivation,
> the claimant must either avail himself of the remedies
> guaranteed by state law or prove that the available
> remedies are inadequate.</u>

<u>Id.</u> at 539 (emphasis supplied).


Here, as in his earlier litigation against the City,

Blaisdell has failed to carry that burden.  He has neither

demonstrated that he lacks an adequate post-deprivation remedy

(whether statutorily or at common law) nor has he shown that

availing himself of such a remedy would be futile or provide him

with inadequate compensation.[1]

_____

[1]     Blaisdell is quite familiar with the remedies afforded
under state law to citizens who believe they have suffered an
unconstitutional taking without due process and just
compensation.  In 2002, he pursued the state law claims against

12

Parenthetically, the court notes that, in addition to the remedies available to him under state law, the City provided Blaisdell with a specific means by which to retrieve the property that had been removed from the sidewalk in front of his property: Officer Macaione left him a note, explaining that the property (i.e., his plants) had been moved to the highway department facility, where he could go to retrieve it. He did not, nor does it appear that he ever contacted the police or any other city officials to inquire as to the whereabouts of those plants.

In light of the foregoing, the City is entitled to judgment as a matter of law as to the claims advanced in count two of Blaisdell's complaint.

II. Count Three - Unconstitutional Municipal Policy.

In count three of his complaint, Blaisdell alleges that the City maintained:

_____

the City he had attempted to advance in the earlier federal litigation (i.e., those relating to the loss of his property in the home that was destroyed by the City after it suffered irreparable fire damage) and over which this court declined to exercise supplemental jurisdiction. A state jury ruled in favor of the City.

an official and/or de facto unconstitutional custom, practice, and/or policy of depriving Blaisdell of his above stated constitutional rights . . ..

No meaningful swift remedial action was ever taken by the City to prevent the continued violation of Blaisdell's rights once it was manifest that said rights were being violated.

Complaint at paras. 22 and 23.

In order to prevail on his claim that the City maintained an unconstitutional custom or policy, Blaisdell must first demonstrate that he suffered some constitutional injury. See, e.g., Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (holding that "[i]f a person has suffered no constitutional injury at the hands of the individual police officer," that person has no claim under section 1983 against the officer's municipal employer). He cannot do so.

In support of the claims advanced in count three of his complaint, Blaisdell alleges that Rochester officials acted in concert and ordered "the Police Department to aid them in their mission via [m]ultiple unlawful summons and arrest[s] of Blaisdell with respect to the violation and/or attempted

14

violation of Blaisdell's rights." Complaint at para. 22. Consequently, although the precise nature of his claim is unclear, it would seem that Blaisdell alleges that the underlying constitutional injury he sustained (as a result of the unlawful municipal custom or policy) was that Rochester officials conspired to maliciously prosecute him for violations of the local ordinance, as well as theft of services.

A.    Malicious Prosecution and the Due Process Clause.

If one assumes that Blaisdell's malicious prosecution claim is based upon alleged violations of the Due Process Clause, his claim necessarily fails. As the Court of Appeals for the First Circuit has observed:

> It is perfectly clear that the Due Process Clause cannot serve to ground [a] federal malicious prosecution claim. No procedural due process claim can flourish in this soil because [the State] provides an adequate remedy for malicious prosecution. Similarly, a plurality of the Supreme Court has concluded that "substantive due process may not furnish the constitutional peg on which to hang" a federal malicious prosecution tort.

Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001) (citations omitted).

B.    Malicious Prosecution and the Fourth Amendment.

Alternatively, it is possible that Blaisdell's malicious prosecution claim is based upon an alleged Fourth Amendment violation.  That is to say, a claim that he was "seized" in violation of his constitutionally protected rights.  Although he was never arrested for having violated the City's ordinance concerning sidewalk obstructions, Blaisdell was taken into custody on the theft of services charge (following which, he was released on personal recognizance) - a fact which, under appropriate circumstances, might give rise to a viable Fourth Amendment claim.[2]

Under the circumstances presented in this case, however, Blaisdell's claim fails for several reasons.  First, Blaisdell

_____

[2]    That he was summoned to appear in court and answer the three charges that he violated the local ordinance does not amount to a "seizure" in violation of Blaisdell's Fourth Amendment rights.  See generally Nieves, 241 F.3d at 54-56 (noting, among other things, that "the view that an obligation to appear in court to face criminal charges constitutes a Fourth Amendment seizure is not the law").  See also Britton v. Maloney, 196 F.3d 24, 30 (1st Cir. 1999) ("Absent any evidence that [plaintiff] was arrested, detained, restricted in his travel, or otherwise subject to a deprivation of his liberty before the charges against him were dismissed, the fact that he was given a date to appear in court is insufficient to establish a seizure within the meaning of the Fourth Amendment.").

16

has not pointed to any admissible evidence in support of his assertion that the arresting officers lacked probable cause to believe that he had engaged in "theft of services" by dumping trash into the school dumpster. While he claims to have received permission from a school janitor to use the dumpster, see plaintiff's objection (document no. 28) at paras. 21 and 53, he has not submitted an affidavit from that janitor, nor has he pointed to any documentation or other evidence suggesting that the janitor had actual (or even apparent) authority to authorize him to use the school's property.

That point is, however, not entirely relevant. The critical question, of course, is whether a reasonable officer, armed with the information reasonably available at the time, could have concluded that there was probable cause to arrest Blaisdell for theft of services. The answer to that question is simple and straightforward: there was probable cause to support Blaisdell's arrest. Notwithstanding Blaisdell's unsupported assertions that he had permission to use the school's property, he does not claim to have shared that information with the officers (in fact, the officers say that when they questioned him at the scene, he

17

admitted he lacked any such permission). In light of the facts known (and available) to them, the arresting officers had ample justification to conclude that there was probable cause to believe that Blaisdell had violated the law. See N.H. Rev. Stat. Ann. ("RSA") 637:8 ("Theft of Services. A person commits theft if he obtains services which he knows are available only for compensation by . . . any other means designed to avoid the due payment therefor."). See also RSA 594:10 ("An arrest by a peace officer without a warrant on a charge of a misdemeanor or a violation is lawful whenever . . . [h]e has probable cause to believe that the person to be arrested has committed a misdemeanor or a violation in his presence."). See generally Illinois v. Gates, 462 U.S. 213, 230-231 (1983) ("Perhaps the central teaching of our decisions bearing on the probable cause standard is that it is a practical, nontechnical conception. In dealing with probable cause, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.") (citations and internal quotation marks omitted).

18

Moreover, even if plaintiff <u>had</u> told the officers about his claim to have received prior permission to use the school's dumpster (a point he does not advance), they would not have been required to accept that assertion as true. <u>See generally</u> <u>Romero v. Fay</u>, 45 F.3d 1472, 1477-78 (10th Cir. 1995) ("In sum, we reject Plaintiff's contention that Defendant Fay's failure to contact his alleged alibi witnesses in itself amounted to a constitutional violation that rendered the arrest without probable cause. Defendant Fay's failure to investigate Plaintiff's alleged alibi witnesses did not negate the probable cause for the warrantless arrest in the absence of a showing that Defendant Fay's initial probable cause determination was itself unreasonable."); <u>Thompson v. Olson</u>, 798 F.2d 552, 557 (1st Cir. 1986) ("Police officers hear many self-exonerating claims from suspects and should not be required to give significant weight to these statements in post-arrest determinations of whether probable cause has dissipated to such an extent that the suspect should be released.").

On this record, it is plain that Rochester police officers had probable cause to arrest Blaisdell for theft of services

stemming from his (seemingly unauthorized) use of the school's dumpster. Consequently, Blaisdell cannot, as a matter of law, prevail on his claim that he was seized in violation of the Fourth Amendment as a result of his warrantless arrest. Nor can Blaisdell demonstrate that, by virtue of having been released on personal recognizance bond and required to appear at his subsequent trial on the theft of services charge, he was subjected to any "post-arraignment deprivation of liberty, caused by the application of legal process, that approximates a Fourth Amendment seizure." Nieves, 241 F.3d at 54 (holding that "run-of-the-mill conditions of pretrial release do not fit comfortably within the recognized parameters of the term [seizure].").

Blaisdell's section 1983 malicious prosecution claim fails for another reason as well. Such a constitutional claim (to the extent it is actually recognized in this circuit)[3] is precluded by the fact that it cannot be based upon a warrantless arrest. See Meehan v. Town of Plymouth, 167 F.3d 85, 89-90 (1st Cir.

---

[3] The Court of Appeals for the First Circuit has observed that it "is an open question whether the Constitution permits the assertion of a section 1983 claim for malicious prosecution on the basis of an alleged Fourth Amendment violation." Nieves, 241 F.3d at 54.

20

1999) (holding that a viable § 1983 malicious prosecution claim cannot be based upon a warrantless arrest).

Finally, to the extent Blaisdell's complaint advances a claim against the City for having inadequately hired and/or trained its police officers, that claim also fails. Because the City's police officers did not violate Blaisdell's constitutionally protected rights, Blaisdell's section 1983 claim against the City for inadequate training/hiring necessarily fails. See Heller, 475 U.S. at 799.

## Conclusion

For the foregoing reasons, and for those set forth in the City's comprehensive memorandum of law (document no. 26) and its reply memorandum (document no. 30), the City is entitled to judgment as a matter of law as to counts two and three of plaintiff's complaint. As to those two counts, then, its motion for summary judgment (document no. 26) is granted.

With regard to plaintiff's state law claims (counts one, four, and five), the court declines to exercise supplemental

21

jurisdiction and those counts are dismissed without prejudice. See 28 U.S.C. § 1367(c); See generally Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 24, 2003

cc: George Blaisdell
    John P. Sherman, Esq.